In the Matter of the Annexation of Certain Territory to the Village of Buffalo Grove.

Museum Development Corporation, et al., Petitioners-Appellants, v. Wheeling Trust and Savings Bank, et al., Objectors-Appellees.

Gen. No. 69–213.

Second District.

August 28, 1970.

Jack M. Siegel and James B. Soble, of Chicago, for appellants.

John F. Grady, of Waukegan, for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Petitioners appeal from a trial court judgment which dismissed their petition seeking to annex their property to the Village of Buffalo Grove. The court below found that there was a lack of contiguity under the applicable

statute. (Ill Rev Stats 1967, c 24, §§ 7–1–2, 7–1–3, and 7–1–4.)

The territory sought to be annexed is characterized as "L" shaped.

The large rectangle represents petitioners' land; the smaller rectangle measured south to the village limits cuts through a cultivated portion of the objectors' 64 acre farm, with about one-third of the farm being to the west and two-thirds to the east. The owners of that portion of the adjacent property which, for a length of 675

feet and with a width of 300 feet, share a common boundary with the village, are not objecting.

The objections relied upon in the trial court were that the land annexed was not contiguous, and also that petitioners could not include only the small portion of the property owned by the objectors to make a connection. The trial court, in a memorandum opinion, found:

> "that on the facts of this case, the Village and the land to be annexed do not 'adjoin one another in a reasonably substantial physical sense.' When a piece of land approximately 3.3 million square feet in area is sought to be annexed to a village and the only common border is a 675-foot strip, the requisite substantiality of physical contact cannot be said to exist, in our opinion."

Petitioners have argued that the territory sought to be annexed clearly touches or adjoins the village in a reasonably substantial physical sense, and that no more is required in compliance with the statutes.

Objectors argue that the finding of the trial court of the lack of physical contiguity must be sustained because it is not against the manifest weight of the evidence; and additionally, objectors argue that a proper analysis of the annexation statute considering its purpose, and an analysis of the cases which have interpreted it, require that there be a unity of purpose and facilities as well as a physical contact to comprise "contiguity."

 Certain general principles have been settled by the cases which have defined the term "contiguity" as used in the statute. "Contiguity" is satisfied by a touching or adjoining in a reasonably substantial physical sense; however, the line of demarcation between the reasonableness or unreasonableness of a contiguity must be drawn on the facts of each case. Western Nat. Bank of Cicero v. Village of Kildeer, 19 Ill2d 342, 352, 167 NE2d 169 (1960). The finding of the trial court as to

contiguity or lack of it will not be disturbed on appeal unless it is manifestly against the weight of the evidence. LaSalle Nat. Bank v. Village of Burr Ridge, 81 Ill App2d 209, 217, 218, 225 NE2d 33 (1967). Irregularity of the resulting boundaries in itself is not a fatal defect in determining contiguity to a village. Western Nat. Bank of Cicero v. Village of Kildeer, supra, at page 351. "Contiguity" is to be given a uniform liberal construction throughout the annexation statute. In re Petition of Flossmoor v. Mutual Nat. Bank of Chicago, 23 Ill App2d 440, 445, 163 NE2d 215 (1960) ; and In re Annexation to City of Loves Park, 89 Ill App2d 284, 232 NE2d 144 (Abst, 1967) ; and contiguity has the same meaning under the disconnection statutes as under the annexation statutes. Wolbach v. Village of Flossmoor, 329 Ill App 528, 531, 69 NE2d 704 (1946) ; LaSalle Nat. Bank v. Village of Burr Ridge, supra, at pages 217, 218 ; LaSalle Nat. Bank v. Village of Willowbrook, 40 Ill App2d 359, 360, 189 NE 2d 690 (1963).

The trial court properly noted that it was not basing the decision on the reasonableness of the annexation or the irregularity in the shape of the territory to be annexed. However, we can find no authority for the general position taken that lack of contiguity may be based on the disproportion between the size and volume of the directly adjoining and connecting area which comprises a common boundary with a municipality, and the size and volume of petitioner's tract which he seeks to annex.

Numerous decisions construing contiguity do not approach the definition with any such comparison between the size and volume of connecting tracts. They do, however, appear to have considered the width of the connection and the length of its projection beyond preannexation boundaries of municipalities. Additionally, the repeated statements in the authorities that each case is to be determined upon its particular facts obviously

does not mean that the discretion of the trial court in determining what is contiguous in any case must be considered final and not subject to review. We must refer to the cases to find the limits of judicial review of a trial court's determination of what is contiguous and what may not be.

In Wild v. The People ex rel. Stephens, 227 Ill 556, 81 NE 704 (1907), relied upon principally by objectors and by the trial court, the court held that where the territory sought to be incorporated involved a central area from which eight tentacles of land of different lengths and widths extended in various directions, there was no contiguity. One of the strips was 310 feet in width extending east and west some half mile and cornering with another strip 200 feet in width east and west, which extended south one-half mile and then intersected another tract of land 2,000 feet in length by 200 feet in width. The court noted that a person could not pass from one strip to the other without passing over land not within the village. Another strip of land 570 feet wide extended south from the main body of the territory almost a mile, and from the south 50 feet thereof a strip of land 50 feet wide extended west a half mile where it intersected the east line of a parcel of land 1,000 feet long and 550 feet wide. It was held that the tract of land which cornered was not contiguous and that the use of the 50 foot strip of land to connect the tract with other territory in the village was a mere subterfuge and was not in compliance with the law.

In Spaulding School Dist. No. 58 v. Waukegan, 18 Ill2d 526, 529, 165 NE2d 283 (1960), the court noted that "the intent of the legislature, as expressed in the word 'contiguous,' is that the territory to be annexed must have a substantial common boundary."

We have found that no contiguity exists when a common boundary of one foot in one instance, and 83 feet in

another sought to include "V" shaped configurations for a distance of 660 feet and 1377 feet, respectively; but have considered that contiguity did exist with reference to that part sought to be annexed which had a common boundary for a distance of 400 feet. People ex rel. Nash v. City of Loves Park, 59 Ill App2d 297, 207 NE2d 490 (Abst, 1965). Recently we have held that where land to be annexed touched the annexing city for a distance of only 20 feet there was not a substantial common boundary between the land annexed and the annexing city and, therefore, there was no contiguity. People ex rel. Cherry Valley Fire Protection Dist. v. City of Rockford, 120 Ill App2d 275, 286, 256 NE2d 653 (1970). We have held that a common boundary of 835 feet with Loves Park constituted contiguity. In re Ordinance No. 491, Annexing Territory to Loves Park, 89 Ill App2d 284, 232 NE2d 144 (Abst, 1967).

In LaSalle Nat. Bank v. Village of Willowbrook, 40 Ill App2d 359, 189 NE2d 690 (1963), it was held that two "fingers" of land, one 50 feet wide by one-quarter of a mile in length, the other 33 feet wide by 660 feet in length, were not isolated from the village following disconnection of intervening territory. Similarly, in LaSalle Nat. Bank v. Village of Burr Ridge, 81 Ill App2d 209, 225 NE2d 33 (1967), we held that two areas of land, one 170 feet in width by 2,400 feet in length, and the other 170 feet in width by 1,300 feet in length, remained substantially contiguous to the municipality after the disconnection of the intervening territory.[1]

---

[1] Objectors seek to distinguish disconnection from annexation cases, and argue that in Burr Ridge and Willowbrook the opinions dealt only with the question of whether the territory remaining after disconnection would be isolated from the municipality only in the sense of being physically separated from it; and that "contiguity" appears in the disconnection statute only to preclude removal when the property is contiguous to *another* municipality. However, in each case the court expressly refers to

In the Matter of the Petition of Westmoreland, Inc., 15 Ill App2d 51, 145 NE2d 257 (Abst, 1957), the city of Springfield sought to annex territory which joined the city's westerly limits with a width of 660 feet running westerly for 1,980 feet; joined a portion which ran southerly for 1,320 feet at right angles with a common boundary of 660 feet; continued southerly to connect with 1,320 foot wide parcels for a distance of some 2,640 feet; then ran southerly again an additional 2,640 feet with a width of 1,320 feet (objectors' tract) ; and joined another 1,320 feet parcel running to the east at a right angle for a distance of 2,640 feet to a certain Chatham Road. (Roughly, the proposed parcels formed a block "C" configuration.)

The court held that contiguity existed between that part which connected directly to Springfield with a common boundary of 660 feet; and that each of the other parcels making up the "C" shaped territory were contiguous to each other, and thus contiguous to the city.

In People v. Village of Hawthorne Woods, 19 Ill2d 316, 318, 167 NE2d 176 (1960), the Supreme Court found contiguity to exist under the provisions of Ill Rev Stats 1957, c 24, § 3–5, when the territory sought to be incorporated was composed "roughly of three areas, the two largest of which have a connecting common boundary for a distance of only 128.7 feet."

■ Under these precedents, we must find that the common boundary with the Village of Long Grove for a distance of 675 feet and a width of 300 feet continued

the remaining territory as still contiguous to the adjacent territory of the annexing municipality after the disconnection. If property is isolated from a municipality, it is not contiguous to it; if contiguous, it is then not isolated. The same definition of contiguity in reason must be applied to both the annexation and the disconnection statutes. See Wolbach v. Village of Flossmoor, supra.

north to petitioners' tract, constitutes contiguity in a reasonably substantial physical sense.

The objectors have devoted the major portion of their brief and argument here, however, to the proposition that the purpose of the contiguity requirement is to insure unity of purpose and facilities, with the corollary that the 300 foot strip selected from the midst of objectors' farm can have no such unity of interest with a municipality. Objectors argue that annexation cannot benefit them from municipal service and will, in fact, cause detriment to them. The objectors further point out that the portion of their property included is of a size and in a position which precludes disconnection under the statute, and that, therefore, the trial court finding is the only result which can protect them against a wrongful inclusion of their property.

■ The statute, however, (Ill Rev Stats 1967, c 24, § 7–1–1) expressly provides for the annexation of "any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality . . . ." There is no limitation in the language of the statute on the right of any petitioner other than an initiating municipality [2] to include unsubdivided or farm lands. "Any territory" has a plain meaning and, in the absence of any limiting language which would require the inclusion of all property owned by an objector, must be held to contemplate including a portion of such prop-

---

[2] Section 7–1–2 contains a limitation only upon a corporate authority initiating such proceedings:

"provided, no tract of land in excess of 10 acres in area may be included in the ordinances of a municipality initiating the proceedings without the express consent of the owner thereof unless the said tract (1) is subdivided into lots or blocks or (2) is bounded on at least 3 sides by lands subdivided into lots or blocks; . . ."

so that we may not conclude that the legislature gave no expression to the problem.

erty, and without regard to its use. See People v. City of DesPlaines, 76 Ill App2d 243, 246, 247, 222 NE2d 1 (1966).

In the corollary case of disconnection, courts have held that an owner who seeks to disconnect need not include all of his property in his petition. Penman v. Village of Philo, 309 Ill App 49, 54, 32 NE2d 640 (1941). Upon disconnection, however, the requirement is that, with the part excepted, the territory must remain connected to the municipality and not isolated from it. See Gieseking v. Village of Harvel, 24 Ill App2d 440, 443, 164 NE2d 622 (1960).

 The objectors urge that it is unjust to permit petitioners to select that portion of their lands which divides the farm, and this argument has considerable persuasion. But to prevent this result we must add to the broad and plain statutory language an unstated requirement that "any territory" has a restricted meaning so that only territory on the perimeter of an objector's land can be included. If that limitation is to be added, or if a petitioner may not include a portion which cannot be disconnected, the legislature must amend the statute considering the justice or injustice of the present requirement when applied to circumstances similar to those present in this case. In Spaulding, supra, at page 530, the court pointed out that it was for the legislature to determine the method of making boundary changes, that the legislature has made no requirement of reasonableness, and has left that question to the city council and the electors rather than to the court. In Kildeer, supra, at page 350, the court pointed out that what the framers of the statute would have done had it been in their minds that a case like the one under consideration would arise is not the point to be considered, but rather it is what they did in fact enact. We pointed out in People v. Village of North Barrington, 94 Ill App2d 265, 272, 237 NE2d

271

350 (1968), that municipalities are mere creatures of the legislature created for convenience in the handling of day to day local problems and that the legislature may act without consent and even against the protest of persons interested in the matter. We further stated that if petitioners for annexation comply with the technical requirements of the statute that the court must uphold the annexation.

 Objectors have strongly urged that the term "contiguity" should be given the interpretation of more than mere touching or adjoining in a reasonably substantial physical sense, relying principally on People ex rel. South Barrington v. Hoffman, 30 Ill2d 385, 198 NE 2d 97 (1964). The following language in the majority opinion is emphasized (pages 387, 388) :

> "The fundamental notion of a municipal corporation is that of unity and continuity, not separated or segregated area; a group of people gathered together in a single mass. This necessity for unity of purpose and facilities forms the very basis for the requirement of contiguity. Although the actual joining of territory is in most cases necessary to provide this community of interest, there may be certain instances where, because of physical obstructions such as navigable rivers or waterways, extended boundary contact between the municipality and the annexed area is impossible. Such does not, however, in all instances mean that there is no single community or that the tracts are not contiguous. 37 Am Jur, p 645."

We do not consider that this case establishes an additional requirement of "unity of purpose and facilities" to the well recognized necessity of reasonably substantial physical touching, as constituting contiguity. The necessity for unity and continuity is but an aspect of the requirement of contiguity, for the purpose of creating

extensions of municipal corporations which are not separated or segregated in a community sense. If there is reasonably substantial physical touching, there is contiguity. If the only obstruction to a unified community is a natural or artificial obstruction which may be bridged to unify a community, there may still be contiguity under the Hoffman Estates doctrine.

Obviously, if the statute permits the inclusion of unsubdivided lands beyond a city boundary including lands presently used for farming, there can be no requirement that the municipality must be already furnishing its services to the outlying area to comprise corporate unity. Objectors cite In re Ordinance No. 491, Annexing Territory to Loves Park, 89 Ill App2d 284, 232 NE2d 144 (Abst, 1967) in which we considered the above quoted language from Hoffman Estates. We noted there that "the record before us does not show that the city of Loves Park will not afford to the annexed area police and fire protection, garbage collection, or that it will fail to perform any other of the municipal functions."

We there simply recognized that the concept of unity of purpose and facilities was the reason for the statutory requirement of contiguity. The standard of a "reasonably substantial touching" merely ensures that the municipality, when the new territory is included, will be connected and compact, not separated or segregated, in a *community* sense.

The citation by objectors of our opinion in People ex rel. Coojar Realty v. Village of Burr Ridge, 81 Ill App2d 203, 225 NE2d 39 (1967), does not point to a different conclusion. We there struck down an attempt of the village to restrain ordinary development of an unincorporated area by the mechanism of a roadway which it sought to project beyond its borders for future expansion. The territory there would not have been contiguous to the village in any community sense.

It may be argued persuasively that the construction which the courts have given to both the annexation and disconnection statutes have resulted in incorporations and disconnections which the legislature did not envision in the original enactment of the statutes and which may not be deemed just or advisable in retrospect. It may now be that a more restrictive statute should be enacted outlining the conditions required for changes in municipal boundaries. See University of Illinois Law Forum, Volume 1961, pages 452–467. The resolution of this question of policy is for the legislature and not for the courts.

We, therefore, hold that the judgment of the court below is against the manifest weight of the evidence. We reverse and remand with directions that the petition for annexation be granted and the question of annexation submitted to the corporate authorities of the Village of Buffalo Grove pursuant to statute.

Reversed and remanded with directions.

ABRAHAMSON and MORAN, JJ., concur.