*In re* ANNEXATION TO THE VILLAGE OF PLAINFIELD.—(THE VILLAGE OF PLAINFIELD, Petitioner-Appellant, *v.* AMERICAN NATIONAL BANK AND TRUST COMPANY, Trustee, *et al.*, Objectors-Appellees.)

(No. 74-49; ▉▉▉▉▉▉)

Third District—February 19, 1975.

McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet (Douglas Hutchison, of counsel), for appellant.

Siegel & Stonesifer, Ltd., of Chicago (Jack M. Siegel, of counsel), for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The Village of Plainfield, plaintiff, appeals an order of the circuit court dismissing an annexation proceeding instituted under provisions of sec-

tion 7—1—2 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 7—1—2 (1971)).

An ordinance to annex certain territory was adopted by the Village and filed in circuit court. At the conclusion of the hearing on the objections, the court sustained eight of the objections and dismissed the ordinance after denying plaintiff's motion to amend the ordinance by deleting certain parcels.

The first issues presented for review is the propriety of sustaining an objection that the State of Illinois was an owner of property included in the ordinance and that plaintiff had failed to obtain the required written consent of the Governor.

Section 7—1—2 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 7—1—2) provides in part as follows:

> "Where real estate owned by the State of Illinois, or any board, agency or commission thereof, is situated in unincorporated territory adjacent to a municipality, the corporate authorities of such municipality may annex any part or all of such real estate only with the written consent of the Governor of the State of Illinois or the governing authority of such board, agency or commission, without any such petition or proceedings required by this Article by resolution of such corporate authorities."

Failure to obtain consent for annexation from State authorities was held to be a fatal defect where a park owned by the State of Illinois was situated within a greater territory sought to be annexed by an ordinance proceeding in *City of East St. Louis v. Touchette*, 14 Ill.2d 243, 150 N.E.2d 178 (1958).

The property in question in the case at bar included part of the right-of-way for public highways within Route 30 and Route 1-55. Use and occupancy by the State are not disputed. The plats of dedication for the parcels constituting the right-of-way provide that the grantors "hereby grant, convey and dedicate to the People of the State of Illinois for the purpose of a public highway * * *." Plaintiff contends that a dedication of a right-of-way for highway purposes is a grant of a determinable fee to the State, with the grantor retaining the underlying fee, and that such interest as the State acquires is not ownership within the meaning of the statute requiring the Governor's consent for annexation. Defendants argue that the decisions of Illinois courts which construe the term "owner" to include the holder of an easement, under the disconnection statute, are controlling here, so that the Governor's consent is required under the annexation statute. The consent provision of section 7—1—2 has not previously been construed by any court.

The disconnection statute (Ill. Rev. Stat. 1971, ch. 24, par. 7—3—6)

provides that "[t]he owner or owners of record of any area of land consisting of one or more tracts, lying within the corporate limits of any municipality * * *" may disconnect from the municipality if certain conditions are met.

In *Woodward Governor Co. v. City of Loves Park*, 335 Ill.App. 528, 82 N.E.2d 387 (2d Dist. 1948), the court held that a railroad with an easement to so much of the land in question as it found necessary to use was an "owner" within the meaning of the disconnection statute and could properly be the only signer representing that property on the petition to disconnect. The court said:

> "In light of our analysis of the numerous cases, defining the word 'owner' when used in statutory enactment, we are of the opinion that section 7—42 of the Cities and Villages Act of 1941 should be construed liberally; that it was enacted for the purpose of granting relief to taxpayers; that the class of persons entitled to its benefits, namely owners, are not necessarily persons owning a fee simple title; that in determining who are its owners, it is necessary to consider the purposes of the acts and all the surrounding circumstances. Applying those conclusions to our problem before us, we are clearly of the opinion that the Chicago & Northwestern Railway Company held such title in the premises involved that they were 'owners' and were entitled to the relief sought under the foregoing statute * * *." 335 Ill.App. 528, 540-41, 82 N.E.2d 387, 393.

In an earlier case construing the word "owner" in the same disconnection statute, the court stated the general rule to be:

> "The word 'owner,' when applied to real estate, is not confined to the holder of a fee simple title, and, unless there is something in the act to the contrary, the legislature will be understood as using the word in its popular sense." (*Vance v. Rankin*, 95 Ill.App. 562, 565 (3d Dist. 1900), *rev'd on other grounds*, 194 Ill. 625, 62 N.E. 807 (1902).)

In *Vance*, two railroads with right-of-way interests were held to be "owners."

More recently a disconnection petition involving land previously conveyed to Northern Illinois Gas Co., subject to a perpetual easement for access and with reservation to the grantor of the right to farm the tract, was ruled to require the signature of both the gas company, who owned the fee, and the grantor who retained an access easement and the right to farm. *Nicholson v. Village of Schaumburg Center*, 33 Ill.App.2d 197, 178 N.E.2d 680 (1st Dist. 1961).

We find only one case involving public highway ownership under the

disconnection statute. In *American Community Builders, Inc. v. City of Chicago Heights*, 337 Ill.App. 263, 85 N.E.2d 837 (1st Dist. 1948), the municipality attempted to prevent a disconnection on the grounds that some of the land consisted of city streets and that the city was, therefore, a necessary party to the petition. The court rejected the theory that the city was an "owner" of the streets by virtue of an easement for public highway purposes. The court said that to permit the city to defeat the disconnection would destroy the purpose of the statute in all cases where the limits of the city are city streets and held that the signature of the owner of the underlying fee was sufficient. There was no evidence in that case of a specific grant of right-of-way or easement to the city, and the streets in question were in fact maintained by the County Highway Department. Thus, that case is clearly distinguishable on its facts from the Plainfield annexation.

Plaintiff cites sections 7—1—10 and 7—1—13 of the Municipal Code as statutory recognition of distinctions between right-of-way dedication and fee simple title to State highways. We agree with defendant that these sections concern alternate methods of annexation for factual situations at variance with those applicable here and are unrelated to proceedings brought under section 7—1—2 of the Code.

■■ Whether the property interest of the State in the highways sought to be annexed is a fee simple absolute or a determinable fee, that interest is of sufficient importance to come within the protection afforded by section 7—1—2. Thus we hold that "real estate owned by the State of Illinois, or any board, agency or commission thereof," in section 7—1—2, includes the land dedicated to the State for public highway purposes whether the State owns the underlying fee or not. The trial court correctly sustained the objection to inclusion of State highway property without the Governor's prior written consent.

The second question before us is whether the trial court erred in ruling that the territory described in the ordinance was not contiguous to the Village. The unincorporated territory sought to be annexed included several subdivisions and was extensive and irregular in shape, and at one point is intersected by Interstate Route 55; the parcels on either side of I-55 are connected only by a 60-foot-wide strip of highway (Route 30), constituting a connecting corridor approximately one-half mile in length, which passes under I-55 and through a cloverleaf exchange.

The trial court sustained defendant's objection that the territory to be annexed was not contiguous to the village, and also sustained objections that the territory was not a contiguous parcel in that it consisted of two or more separate parcels and that it contained strips and corridors connecting separate parcels.

Section 7—1—1 of the annexation statute provides:

"Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality, may be annexed thereto as provided in this Article."

██ In interpreting this statute, it has been held that use of the word "territory" does not permit the annexation of two separate tracts by a single petition. *Krupp v. Taylor,* 20 Ill.App.2d 282, 156 N.E.2d 13 (4th Dist. 1959). Statutory requirements of contiguity mean contiguous in the sense of adjacent and parallel to existing municipal boundaries. (*People ex rel. Adamowski v. Village of Streamwood,* 15 Ill.2d 595, 155 N.E.2d 635 (1959); *In re Annexation Territory to City of Springfield,* 85 Ill.App. 2d 191, 228 N.E.2d 755 (4th Dist. 1967); *People ex rel. Coojar Realty Corp. v. Village of Burr Ridge,* 81 Ill.App.2d 203, 225 N.E.2d 39 (2d Dist. 1967).) Reasonably substantial physical touching is required to achieve contiguity. (*In re Village of Buffalo Grove,* 128 Ill.App.2d 261, 261 N.E.2d 746 (2d Dist. 1970).) The trial court's findings as to contiguity or lack of it will not be disturbed on appeal unless it is manifestly against the weight of the evidence. *In re Village of Buffalo Grove; La Salle National Bank v. Village of Burr Ridge,* 81 Ill.App.2d 209, 225 N.E.2d 33 (2nd Dist. 1967).

██ We agree with defendants that the judgment of the circuit court here was clearly supported by the evidence and may not be disturbed on appeal. Several separate instances of noncontiguity were cited by defendants in their objections.

The most obvious breach of contiguity occurs where one small parcel (Number 12) included in the ordinance is completely separated from the remaining territory to be annexed by a distance of 3700 ft., although it is adjacent to the municipal boundary. Inclusion of this separate parcel clearly falls within the prohibition of the *Krupp* case, *supra.*

At another location along Route 30, one triangular parcel joins the angle of an irregular polygon-shaped parcel only at the point of one angle of the triangle. Characterized as a "Euclidian point" by the trial court, this juncture has no measurable width and occurs in the center of the highway with no part of the municipality touching it on either side. The effect is a "V" shaped notch in the boundary of the territory to be annexed. A similar attempt to annex two tracts whose juncture was at the points of two right angle corners so that one could not travel from one tract to the other without leaving the municipality was condemned in *Wild v. People ex rel. Stephens,* 227 Ill. 556, 81 N.E. 707 (1907).

Defendants also attack the attempt to connect two large portions of territory by means of the highway corridor (Route 30) 60 ft. wide extending for one-half mile through the I-55 and Route 30 interchange

and touching no part of the municipality on either side for the ½-mile length. In view of our holding above that this highway cannot be annexed without prior written consent from the State of Illinois, the contiguity of the corridor and of the parcels it attempts to connect becomes hypothetical and not necessary to this decision. Without the corridor, the parcels east of I-55 are totally separated from the remaining territory to be annexed, and contiguity is totally lacking.

Because the absence of contiguity is so evident in the above instances, it is unnecessary to examine the other alleged examples of "strip" or "corridor" annexations.

Plaintiffs urge that the irregular shape of the territory to be annexed is justified because the Village sought to annex only those areas which are subdivided and resided upon and which would require municipal services. Plaintiff cites *People ex rel. Village of South Barrington v. Village of Hoffman Estates*, 30 Ill.2d 385, 198 N.E.2d 97 (1964), where annexation of a parcel connected to the municipality only by a bridge across a tollway was permitted. In the majority opinion the court noted that a "unity of purpose and facilities" existed between the Village and the territory to be annexed. We agree with the view adopted in *In re Village of Buffalo Grove, supra*, that "unity of purpose and facilities" is merely one aspect of contiguity, and not an additional requirement. Nothing in the *Hoffman Estates* case suggests that separate and noncontiguous parcels may be joined in one annexation petition merely because there exists some unity of purpose and facilities between them. We reject plaintiff's attempt to create an exception to the requirement of physical contiguity.

At the close of the hearing on defendants' objections, plaintiff sought by motion to amend the annexation ordinance by deleting various parcels of land, the inclusion of which was objected to by defendants. The court denied the motion to amend and also denied an oral motion for a continuance to allow the municipal authorities time to consider an amendment to the ordinance. The court then dismissed the ordinance seeking annexation.

Plaintiff asserts that all of the defects in the annexation ordinance would have been eliminated by the amendment offered, and that the court should have allowed the motion under section 46 of the Civil Practice Act. Plaintiff argues that the Civil Practice Act applies where the specific statute does not control procedure, and relies on *In re Annexation of Territory in County of Kankakee*, 30 Ill.App.2d 391, 174 N.E.2d 710 (2d Dist. 1961). In the *Kankakee* case the trial court permitted deletion of certain perimeter land already within the boundaries of another city by amendment to the annexation petition. The court held that inclusion of such prohibited land in the petition was not a jurisdic-

tional defect if it is excluded by amendment *before* the hearing on the validity of the petition, and pointed to the statutory provision for exclusion of such perimeter land under sections 7–1—3(4) and 7—1—4 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, pars. 7—1—3(4) and 7—1—4). We think the *Kankakee* case is clearly distinguishable from the case before us, because here the amendment to delete part of the territory to be annexed was offered at the close of the hearing on the validity of the petition, and did not purport to involve perimeter land.

■■ Courts have repeatedly required strict adherence to statutory procedures in annexation proceedings. (See *Crocher v. Abel*, 348 Ill. 269, 180 N.E. 852 (1932); *People ex rel. Universal Oil Products Co. v. Village of Lyons*, 400 Ill. 82, 79 N.E.2d 33 (1948); *In rel Village of Green Oaks*, 1 Ill.App.3d 773, 275 N.E.2d 462 (2nd Dist. 1971).) Under the circumstances of this case, the court did not abuse its discretion in refusing to allow amendments at the close of the hearing.

The judgment of the circuit court is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.