THE PEOPLE *ex rel.* FREEPORT FIRE PROTECTION DISTRICT *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF FREEPORT, Defendant-Appellee.

Second District   No. 77-39

Opinion filed March 28, 1978.—Rehearing denied April 27, 1978.

John A. Leemon, of Mt. Carroll, for appellants.

Peter D. McClanathan and Woodruff A. Burt, both of Freeport, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is an annexation case in which the Freeport Fire Protection District and the town of Silver Creek petitioned for a writ of quo warranto against the city of Freeport to oust the city from jurisdiction over certain territory annexed by the city, which formerly was part of the town of Silver Creek and the Freeport Fire Protection District.

The basis of the quo warranto writ is that the territories annexed are not contiguous to the city as required by section 7—1—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—8), and as the Illinois courts have construed the term "contiguous." Section 7—1—8 provides that:

"Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality * * * may be annexed to the municipality* * *."

Section 7—1—3 of the Illinois Municipal Code provides that the annexation may be objected to on the ground that "(1) that the territory described in the petition or ordinance, as the case may be, is not contiguous to the annexing municipality."

The trial court, after a hearing, refused to issue the writ, finding that the territories annexed were contiguous within the meaning of the statute.

The contiguity of the territories annexed by the city depends on the connection between the two created by the city annexing a stretch of an east-west road known as Fairgrounds Road and a portion of Illinois Route 26, running north and south and intersecting Fairgrounds Road. Adjacent to the city's south boundary is a tract of land known as the Moll property, whose southern boundary is along the north edge of Fairgrounds Road and whose eastern boundary is along the western edge of Route 26. The confluence of the two highways and their relationship to the Moll and Micro properties is shown in the sketch below. (It will be noted that that portion of Fairgrounds Road east of Route 26 and that portion west of Route 26 do not exactly coincide, the eastern portion apparently being about five feet north of the western portion, where it intersects Route 26.)

By successive separate ordinances in the same session of the City Council, the city, following the Moll annexation, annexed a tract immediately south of Fairgrounds Road and immediately east of Route 26, known as the Micro Switch land; a tract adjacent to the Micro property along part of its southern boundary (Stephenson County Home); a farm, the Lamm Farm (lying immediately south of the Stephenson County property and extending westward to Route 26); part of the right-of-way of the Chicago, Milwaukee St. Paul Railroad, running through the Lamm Farm; and lastly,

"West Fairgrounds Road from South Walnut Road to a point 3921.92 feet west of Illinois Route 26; South Walnut Road from

West Fairgrounds Road south to West Lamm Road; West Lamm Road from South Walnut Road to Illinois Route 26; Illinois Route 26 from a point 952 feet north of West Fairgrounds Road to the south line of the northwest quarter of the southwest quarter of Section 7, Township 26, North, Range 8, East; Illinois Route 26 from the north line of West Lamm Road southerly to the south line

of the northwest quarter of Section 18, Township 26, North, Range 8, East."

It is the city's theory that all the lands adjacent to the annexed roads are

made contiguous by reason of touching these roads. Section 7—1—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1), in part provides:

"The new boundary shall extend to the far side of any adjacent highway and shall include all of every highway within the area annexed."

This provision is obviously aimed at preventing a gap or hiatus whereby a portion of a highway adjacent to the annexed territory, which is a necessary and integral part of the annexed territory, would be isolated, creating problems as to traffic control, financing, maintenance, etc. The intent of the statute as amended in 1965 is a salutary one, but we do not believe it is intended to be used as the city is attempting to use it here. That is to say, that while a highway or road adjacent and parallel to territory validly annexed by reason of contiguity to a municipality is automatically annexed along with the new annexation, making the territory on its far side also eligible for annexation, the road must form a new boundary with the next annexation, not merely touch it in the manner of a "T" or at a corner. Many Illinois cases have considered the question of annexation of territory through annexation of roads and have rejected the theory invoked here by the city. (See *People ex rel. Adamowski v. Village of Streamwood* (1959), 15 Ill. 2d 595 (which, while decided prior to the amendment requiring the annexation of adjacent highways, clearly asserts the objection to using *highways or streets* as a means of annexing the territory adjacent to the highway)), and the numerous Illinois appellate decisions on this point, *People ex rel. Coojar Realty v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 203; *In re Annexation to City of Springfield* (1967), 85 Ill. App. 2d 191; *People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill. App. 2d 275; *People ex rel. Marre v. Countryside Sanitary District*(1972), 5 Ill. App. 3d 747; *In re Annexation to Village of Plainfield* (1975), 25 Ill. App. 3d 1026; *People ex rel. Johnson v. City of Waukegan* (1976), 35 Ill. App. 3d 713.

In its decision in *People ex rel. Marre v. Countryside Sanitary District,* the court in rejecting a scheme to enclose a certain territory by an annexation based on a street connection, said:

"As stated above, the meaning of the term 'contiguous' is the determinative factor in deciding the validity of the highway annexation. The case of *Village of Streamwood, supra,* is of interest here because in that case also the village sought first to annex some highways (under a statute identical to paragraph 443a.2, except that it applied to villages instead of sanitary districts) and then some of the fully surrounded territories. In holding the purported highway annexations invalid, the court

stated, at page 601, that the word 'contiguous,' as used in the statute, must be defined in keeping with the intent of the legislature, which was to allow a municipality to annex a roadway which separates the municipality from territory just the other side of the roadway which the municipality needs for municipal purposes and natural growth. Any 'reasonable interpretation' of 'contiguous,' the court said, 'must mean contiguous in the sense of adjacent to and parallel to the existing municipal limits* * *.' To hold otherwise, it said, would condone strip or corridor annexations which have always been condemned." 5 Ill. App. 3d 747, 751-52.

In the recent case of *Westcom, Inc. v. Woodridge Park District* (1977), 49 Ill. App. 3d 903, this court (construing "adjoining" as meaning the same as contiguous) rejected an attempt by a park district to annex a tract of land somewhat remote from the existing boundaries of the park district by means of a utility easement of Northern Illinois Gas Company, which easement had a common boundary with the park district, at one end, for a distance of some 120 feet, then extended a half mile to a similar connection, with the objector's land, consisting of 72 acres. In finding the annexation did not meet the contiguity test, this court said:

"We do not believe the test has been met here. In *People ex rel. Adamowski v. Village of Streamwood* (1959), 15 Ill. 2d 595, 601, 155 N.E.2d 635, 638, the supreme court defined 'contiguous' to mean adjacent to and parallel to existing municipal limits, noting that strip or corridor annexations have always been condemned by the courts and never been permitted by the legislature. *Village of Streamwood* and the many cases following it were primarily concerned with street or highway annexations [citation], and it has been said that such cases apply only to such annexations. [Citations.] Certainly, cases dealing with privately owned tracts on the one hand, and streets or highways on the other, are the more precise precedent where those categories are clearly the subject of the litigation [citation], but we consider that a utility right-of-way, as in the instant case, may well have characteristics of each category.

There would seem to be good reason to also consider the 'adjacent and parallel' test, which has not been limited to street and highway annexations by the supreme court, where narrow corridors of land owned by a public utility are used as connective links between other privately owned tracts and a municipality for annexation purposes. We see little difference between such strips and highways in this context; both meander throughout unincorporated territory adjacent to municipalities and are

convenient conduits through which annexations which could not otherwise be accomplished might circumvent the annexation statutes.

The test of whether annexed territory is contiguous to and adjoins the municipality remains the same: is there a touching or adjoining in a reasonably substantial physical sense? Among the factors to be considered in that determination are the extent of a common boundary between the areas, the length of the projection of the annexed territory beyond municipal boundaries and, in this case, whether such projection extends perpendicular to or is parallel with such boundaries.

We find that plaintiffs' land and the connecting corridor we have described do not adjoin the district as required by the statute and the contrary finding by the trial court was against the manifest weight of the evidence." 49 Ill. App. 3d 903, 906-07.

The trial court, in its original judgment order, in the "FINDINGS OF FACT" stated:

"5. Exhibit 20 of the defendant's answer indicates that the only portion of the property in Sections 7 and 18 of Silver Creek Township which has any contact with property then in the City of Freeport or then being annexed to the City of Freeport is at the Southeast corner of the Moll property and the Northwest corner of the Micro property. If one includes the roadways (West Fairgrounds Road) as shown on said Exhibit 20, the maximum area involved that could be construed to be adjacent is 134'. If the roadways are excluded, there is only five feet in which the Micro property would corner the Moll property."

The court went on to hold that "[e]ven though the shape of the land annexed is somewhat irregular, there now exists a common border of reasonable length."

It is clear from the court's order that the contiguity of the Moll and Micro properties depends entirely on the connection between them created by the ends of the roadways. (See sketch.) Actually, the lands do not even "corner" on each other in and of themselves, hence do not even have as much touching as was present in the early *Wild* case (*Wild v. People ex rel. Stephens* (1907), 227 Ill. 556.) In that case the supreme court first laid down the stricture against "cornering" as a sufficient touching for establishing contiguity. In that case, the lands sought to be annexed to the Town of Weston were connected to the town only by long narrow strips of land running north and south from the town and intersecting with other long, narrow strips running east and west, these strips of land being adjacent to each other only at the corners. As the opinion expressed it, "[t]he only way in which the 310-foot strip touches or adjoins the 200-foot

strip is by the fact that they corner with each other. The west line of the first extended is the east line of the second, and the south line of the first extended is the north line of the second." (227 Ill. 556, 560.) The court held the two strips of land were not contiguous to each other. This case has been cited and followed in the appellate courts since then, see *People ex rel. Hanrahan v. Village of Wheeling* (1976), 42 Ill. App. 3d 825, and the cases cited therein.

In the present case there is no physical touching of the private lands involved whatsoever. The only contact is through the public highway and this is not by a parallel highway, but by the extension of two intersecting highways, one of which adjoins the Moll property only on its south boundary, and the other of which adjoins the Moll property only on its east boundary. The roads are not adjacent and parallel to the Moll property in the sense required by the cases.

After the trial court issued its judgment order finding that there was a common border of 129 feet, the plaintiffs filed a motion for a new trial on the basis of a mistake in fact, alleging that both parties had accepted a plat known as the Fehr Plat as being accurate and the court's decision had been rendered on the basis of the Fehr Plat, however, as a matter of fact, the Fehr Plat was incorrect and actually there was a gap or hiatus of some 67 feet between the south line of West Fairgrounds Road and the north line of the Micro property, which 67 foot strip belongs to Stephenson County, not having been annexed by anyone else. In response to that motion, the city filed an affidavit by the Stephenson County superintendent of highways stating that the 67-foot hiatus was actually dedicated by Stephenson County to widen West Fairgrounds Road, long before the annexation in question, therefore, there was no gap, and that the intent was that the northerly boundary of the Micro tract be coincident with the southerly boundary of West Fairgrounds Road. This affidavit was apparently accepted by the court as evidence that Stephenson County had abandoned its right to a strip of land just south of the original southern boundary of West Fairgrounds Road and that this strip had been annexed by the city when it annexed West Fairgrounds Road. Since the only official document offered in support of this contention is a resolution of the Stephenson County Board of 1967, authorizing the mere *improvement* of a certain stretch of West Fairgrounds Road, running between Route 26 and County Highway No. 12, it seems entirely unsubstantiated in any official way that the city acquired this land when it annexed West Fairgrounds Road.

In any event, however, we note that the trial judge in ruling on the post-trial motion did not repeat his earlier finding that there was a common boundary of 129 feet for contiguity purposes. His order disposing of

the motion for a new trial found that "the Graham plat shows that if the North line of the Micro or Honeywell, Inc., property were extended Westerly across SBI Rte. No. 26 it would be 2.89 feet South of the center line of that portion of West Fairgrounds Road, which lies Westerly of the West line of SBI Rte. No. 26." As we view the Graham sketch (see below)

it would appear that not only is there no common boundary between the Moll property *per se* and the Micro property, and that they do not even

corner on each other as private property, but that even by using the extension of the boundaries of the Moll property allowed by the annexation of a cross-section of the width of Route 26 and West Fairgrounds Road, the touching is not substantial. The Moll property must be the basis and justification for all other annexations, therefore, we see no basis for the trial court's finding as to what the result would be upon extending the north line of the Micro property westward, across Route 26. It seems to us that the relevant finding would be the effect of extending the boundaries of the Moll property south and east, across the intersection of West Fairgrounds Road and Route 26. Doing this it is obvious that even considering the roads, the common boundary in either direction would be less than 100 feet.

■■ As we observed earlier, however, while the annexation statute, section 7—1—1 (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1) mandates the annexation of a road or highway adjoining any properly annexed territory, the purpose of the statute is clearly distorted when it is used as a device to create a mere touching by a road leading away from or merely cornering on the territory to be annexed, as is the case here. The purpose of the statute is to create a new boundary, including the road, for convenience, efficiency and future growth. Where the annexed territory merely meets a cross-section of a road running perpendicular to it, that purpose—which clearly is to protect and enhance the annexed territory— is not served. As explained in the *Marre* case, cited above, the provision with regard to automatic annexation of highways had a limited purpose— it was not intended to be used as a device for annexation where the road has no logical connection with the annexed territory.

It appears to us that there was not in this case even a "cornering" of the Moll property with the Micro property. The slight connection between the two brought about by the extension of the width of the two intersecting highways does not serve as a basis for further annexation and we find no contiguity between the Moll property and the subsequent attempted annexations. A road or highway for the purposes of the annexation statute is not intended to be used as an electrical current to generate further annexations.

■■■ There is no question as to the propriety of the Moll property annexation and the portion of the roads adjoining it. However, we do not regard the annexation beyond the Moll tract as meeting the statutory requirement of contiguity, inasmuch as it is our opinion that they do not touch or adjoin said city "in a reasonable, substantial, physical sense." We note that the city has raised the additional defense of laches to the plaintiffs' petition for quo warranto. Because of the trial court's ruling in the city's favor as to contiguity, the issue of laches is still available as a defense, since it has not been ruled on.

The judgment of the circuit court of Stephenson County is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GUILD and NASH, JJ., concur.