2000 SD 77

**CITY OF RAPID CITY, Plaintiff and Appellant,**

v.

**William ANDERSON, Stanley W. Scheurer, Individually, and Marlys Faber, in her capacity as Register of Deeds, Pennington County, South Dakota, Defendants and Appellees,**

**Marlys Faber, in her capacity as Register of Deeds, Pennington County, Third Party Plaintiff and Appellee,**

v.

**City of Box Elder, a municipal corporation of the State of South Dakota, Third Party Defendant and Appellee.**

No. 21095.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 2000.

Decided June 14, 2000.

Robert R. Jackson, City Attorney, Rapid City, for appellant.

Robert M. Nash of Wilson, Olson, Nash & Becker, Rapid City, for appellees Anderson and Scheurer.

Glenn A. Brenner and Ronald D. Buskerud, Pennington County States Attorney, Rapid City, for appellee Faber.

Rexford A. Hagg of Whiting, Hagg & Hagg, Rapid City, for appellee City of Box Elder.

AMUNDSON, Justice.

[¶ 1.] City of Rapid City, South Dakota (Rapid City) appeals the declaratory judgment holding that the City of Box Elder, South Dakota (Box Elder) had jurisdiction to approve a subdivision plat. We affirm in part, reverse and remand in part.

### FACTS

[¶ 2.] In July of 1998, William Anderson (Anderson) and Stanley Scheurer (Scheurer) filed a plat to subdivide seven acres of their real property into five lots. The property, Paradise Estates, is located approximately 2.8 miles from the city limits of Box Elder, 2.9 miles from the city limits of Rapid City, and .7 miles from the Rapid City Airport. Around July 20, 1998, Anderson and Scheurer submitted their plat to the City Council of Box Elder for approval. The approved plat was then submitted to the Pennington County Register of Deeds, who reviewed, accepted, and filed the plat on July 22, 1998.

[¶ 3.] After filing, Anderson and Scheurer applied for a building permit through Pennington County Planning and Zoning Commission. At this time, Rapid City became aware of the plat. Rapid City believed that the property was within its jurisdiction. Rapid City thereafter commenced a declaratory judgment action against Anderson, Scheurer, and the Pennington County Register of Deeds Marlys Faber (Faber), to have the plat held invalid. Rapid City claimed that under SDCL

11–6–26 [1] Box Elder did not have subdivision jurisdiction over the subject property. Anderson and Scheurer counterclaimed alleging Rapid City's annexation of its airport was not valid under SDCL Chapter 9–4.[2] A third-party action was also initiated by Faber against Box Elder claiming it had no platting jurisdiction because Box Elder "does not have a major street plan for the subject property nor has it filed a certified copy with the Register of Deeds of Pennington County."

[¶ 4.] The trial court found that the annexation of the Rapid City airport was invalid. Further, the trial court found that, based upon the invalid annexation, under SDCL 11–6–26 Box Elder has platting jurisdiction by virtue of its one-tenth of a mile closer proximity to the subject property. Ultimately, the trial court dismissed both Rapid City's declaratory judgment action and the third-party action against Box Elder.

[¶ 5.] Rapid City appeals the following issues:

1. Whether the trial court erred in holding that Rapid City's annexation of its airport was invalid?

2. Whether the trial court erred in holding that Box Elder could validly approve a subdivision plat within three miles of its corporate limits, but which was not covered by its major street plan as required by SDCL 11–6–26?

## STANDARD OF REVIEW

[¶ 6.] We have often stated that " '[i]n [reviewing] declaratory judgment actions, this Court "has an obligation to reach its legal conclusions independent from the conclusions reached by the trial court." ' " *Agar Sch. Dist. No. 58–1 v. McGee,* 1997 SD 31, ¶ 10, 561 N.W.2d 318, 321 (quoting *Reis v. Miller,* 1996 SD 75, ¶ 5, 550 N.W.2d 78, 79–80 (quoting *Black Hills Novelty Co. v. South Dakota Comm'n on Gaming,* 520 N.W.2d 70, 72 (S.D.1994) (quotations omitted))). In addition, we review a trial court's findings of fact "under a clearly erroneous standard and its conclusions of law under a de novo standard." *Mid–Century Ins. Co. v. Lyon,* 1997 SD 50, ¶ 4, 562 N.W.2d 888, 890 (citing *Northwestern Bell Tel. Co., Inc. v. Stofferahn,* 461 N.W.2d 129, 134 (S.D. 1990)).

[¶ 7.] This appeal requires us to examine the statutes governing filing of subdivision plats and the extension of municipal boundaries by annexation. In discussing the rules of statutory construction, we have often stated:

"Questions of law such as statutory interpretation are reviewed by the Court de novo.... The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as

---

1. Under SDCL 11–6–26, if a municipality files a comprehensive plan, which includes a major street plan or the municipality is in the process of adopting a major street plan, any plat for subdividing land within three miles of the municipality's corporate limits shall be filed with that municipality's city council for approval. An exception to the three mile limit exists if the platted land is within more than one municipality's three mile jurisdiction. In such cases, an "equidistant" rule applies to terminate each municipality's jurisdiction at a boundary line equidistant from the limits of the two municipalities' corporate limits. The full text of the statute will be discussed later.

2. The statute sections under SDCL ch. 9–4 identify the requirements for changing municipal boundaries by annexation.

clearly expressed. Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject. But, in construing statutes together it is presumed that the legislature did not intend an absurd or unreasonable result. When the question is which of two enactments the legislature intended to apply to a particular situation, terms of a statute relating to a particular subject will prevail over the general terms of another statute."

*Dahn v. Trownsell,* 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539 (quoting *Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (citing *U.S. West Communications, Inc. v. Public Utilities Comm'n,* 505 N.W.2d 115, 122–23 (S.D.1993) (citations omitted))).

## DECISION

[¶ 8.] **1. Whether the trial court erred in holding that Rapid City's annexation of its airport was invalid.**

[¶ 9.] Initially, it is also important to note that Rapid City fails to cite any authority to support its argument that the trial court erred in finding the annexation was invalid. Instead, Rapid City only asserts that the discussion of the validity of the airport annexation is irrelevant and the trial court improperly placed the burden upon it to prove that the annexation was valid.[3] In fact, Rapid City contends in its brief that the issue of the validity of Rapid City's annexation of the Rapid City airport is a "five hundred pound red herring, entirely distracting attention from the very simple, unequivocal, and dispositive question of whether Box Elder's approval of the subject plat was valid." The trial court clearly did not find this issue a "distraction" based upon its substantial discussion about the invalidity of Rapid City's annexation. While it is true that under

our de novo standard of review in a declaratory judgment action, this Court does not have to accept the trial court's conclusions of law hook, line, and sinker, we do not agree with Rapid City that this issue is a "five hundred pound red herring." A review of the record shows that a majority of the trial court's decision was devoted to the annexation issue; therefore, we will address this issue first.

[¶ 10.] The requirements for annexation by a municipality are identified in SDCL 9–4–1. The statute provides:

The governing body of a municipality, upon receipt of a written petition describing the boundaries of any territory, *contiguous* to that municipality sought to be annexed to that municipality, may by resolution include such territory or any part thereof within such municipality if the petition is signed by not less than three-fourths of the registered voters and by the owners of not less than three-fourths of the value of the territory sought to be annexed to the municipality.

For purposes of this section, *"contiguous"* includes territory separated from the municipality by reason of intervening ownership of land used as a golf course or any land owned by the State of South Dakota or any subdivisions thereof.

SDCL 9–4–1 (emphasis added). A review of SDCL 9–4–1 clearly shows that one element of a valid annexation is that the territory sought to be annexed must be *contiguous* to the annexing municipality. Therefore, in this case, the airport property must be *contiguous* to Rapid City. In discussing the importance of contiguity, this Court noted in *Krebs v. City of Rapid City,* 364 N.W.2d 128, 130 (S.D.1985) (citing *Big Sioux Township v. Streeter,* 272 N.W.2d 924 (S.D.1978)), that "the territory [must] be contiguous to the annexing city

---

3. How can the annexation be irrelevant if it impacts the equidistant rule under SDCL 11–6–26? Rapid City has provided no authority why it is irrelevant or why the trial court erred in discussing the issue. Rapid City should not be allowed to use the annexation as a springboard to garner jurisdiction under the equidistant rule.

and ... contiguity encompasses more than physical touching of boundaries but also encompasses the requirement of the community of interests which necessitates that the annexation be natural and reasonable."

[¶ 11.] In the present case, Rapid City annexed the Rapid City Airport, which is approximately 3.7 miles from Rapid City at Jolly Lane in a straight line or approximately 4.7 miles from Rapid City at Race Track Road. According to the annexation, Rapid City would have a 200–foot–wide right-of-way and railway frontage along Highway 44 for 4.7 miles to the airport. The trial court found that this annexation was not contiguous to Rapid City.

[¶ 12.] A review of cases in other jurisdictions reveals that the issue of "contiguity" of annexed property has arisen on numerous occasions. Contiguity has often been found to be synonymous with "adjacent" or "adjoining." *See, e.g., Johnson v. City of Hastings*, 241 Neb. 291, 488 N.W.2d 20, 23 (1992) (noting that "[t]he terms 'contiguous' and 'adjacent' are used synonymously and interchangeably"); *State v. City of Milford*, 576 A.2d 618, 621 (Del.Ch.1989) (agreeing with the argument that "the boundaries of the annexed land and of the City should either touch at every point, or, at the very least, should share a substantial common boundary"); *Freeport Fire Protection Dist. v. City of Freeport*, 58 Ill.App.3d 314, 15 Ill.Dec. 871, 374 N.E.2d 479, 482 (1978) (holding that "[a]ny 'reasonable interpretation' of 'contiguous,' ... 'must mean contiguous in the sense of adjacent to and parallel to the existing municipal limits' "); *Wescom, Inc. v. Woodridge Park Dist.*, 49 Ill.App.3d 903, 7 Ill.Dec. 560, 364 N.E.2d 721, 723 (1977) (noting that "the courts have generally held adjoining to be synonymous with contiguous, both terms meaning touching or adjoining in a reasonably substantial physical sense"); *Village of Plainfield v. American Nat'l Bank & Trust*, 25 Ill.App.3d 1026, 323 N.E.2d 841, 844 (1975) (finding "[s]tatutory requirements of contiguity mean contiguous in the sense of adjacent

and parallel to existing municipal boundaries").

[¶ 13.] The type of annexation shown in this case is commonly referred to as "corridor," "strip," "shoestring," or "long lasso" annexations and have been disallowed by a majority of courts. *See City of Milford*, 576 A.2d at 621–22 (citing numerous cases interpreting the meaning of "contiguous"). This Court was faced with an irregular shaped annexation in *Big Sioux Township*, 272 N.W.2d at 926–27, where the township brought a declaratory judgment action to challenge the annexation of the McCook Lake area by North Sioux City, South Dakota. In discussing annexation by municipalities, this Court noted:

> [W]e interpret the terminology in the annexation statutes to require not only common boundaries but also a community of interest. *The terms "contiguous" and "adjoining" regarding annexation indicate a touching in the physical sense with a common border of reasonable length or width.* Factors involved in this consideration include significant physical barriers, irregular shapes, such as narrow corridors and gerrymandering, and unjustified enclaves or islands of unannexed territory entirely surrounded by the municipal corporation. [citation omitted]. In the annexation context, "contiguity" and "best interest" include more than common boundaries. [citations omitted]. There must also be a showing of a community of interest flowing from one of the justifications for a natural and reasonable annexation discussed above. (Emphasis added).

*Id.* In declaring the annexation in *Big Sioux Township* void, we noted that the annexation sought by North Sioux City created an island of unannexed territory. *Id.* at 927. Further, "[t]he interstate highway is a physical barrier running lengthwise and providing two access points between the McCook Lake area and the populated portion of [North Sioux City]." *Id.*

[¶ 14.] A review of *Big Sioux Township* and case authority from other jurisdictions reveals that Rapid City's annexation of the Rapid City Airport via a 200 foot right-of-way for 4.7 miles is not "contiguous." *See Johnson,* 488 N.W.2d at 22–25 (finding a 120–foot–wide saucepan-shaped tract of land that ran for three-quarters of a mile in length from the city limits was not contiguous or adjacent to the boundary of the city); *City of Milford,* 576 A.2d at 620 (opining that none of the questioned properties are contiguous and "only a narrow, few-feet-wide portion physically touches existing City boundaries"); *Wescom,* 7 Ill. Dec. 560, 364 N.E.2d at 723–24 (holding that a corridor or strip of right-of-way running 120.5 feet wide and one-half mile long to the plaintiff's land was not contiguous or adjoining to the district); *Village of Plainfield,* 323 N.E.2d at 843 (finding that the annexed properties, based upon their irregular shapes and distances from the Village, clearly lacked contiguity); *People ex rel. Marre v. Countryside Sanitary Dist.,* 5 Ill.App.3d 747, 284 N.E.2d 308, 313 (1972) (holding that a tract of annexed land fifty feet wide and 1,580 feet in length was not contiguous because it was not "adjacent to and parallel to" the district, nor was it "touching or adjoining . . . 'in a reasonably substantial physical sense' ").

[¶ 15.] Under SDCL 9–4–1, annexed property must be *contiguous;* here, it is clearly not. In *Big Sioux Township,* this Court noted:

> The basic concept of a municipal corporation is that of a homogeneous entity and, in a territorial sense, the entity is "one of unity, and not of plurality; of compactness or contiguity, not separation or segregation." [quotations omitted.] In order to maintain and preserve this concept of homogeneity and unity, any annexation to a municipal corporation must necessarily be natural and reasonable.

272 N.W.2d at 926. To allow the use of "corridor" annexations would be to defeat the basic concept of a municipal corpora-

tion, that of unity and compactness. Rapid City's annexation of the Rapid City Airport by a 200 foot-wide, 4.7 mile-long corridor does not "indicate[ ] a touching in the physical sense with a common border of reasonable length or width." *See Big Sioux Township,* 272 N.W.2d at 926. The trial court did not err in declaring the annexation of the Rapid City Airport invalid due to the lack of contiguity between Rapid City and the annexed airport.

[¶ 16.] **2. Whether the trial court erred in holding that Box Elder could validly approve a subdivision plat within three miles of its corporate limits, but which was not covered by its major street plan as required by SDCL 11–6–26.**

[¶ 17.] In determining where to submit a subdivision plat, SDCL 11–6–26 applies and provides which municipality has jurisdiction to consider the plat and approve the same. Under SDCL 11–6–26,

[f]rom and after the time when the city council of any municipality shall have adopted a comprehensive plan which includes at least a major street plan or shall have progressed in its comprehensive planning to the stage of making and adoption of a major street plan, and shall have filed a certified copy of such major street plan in the office of the register of deeds of the county in which the municipality is located, no plat of a subdivision of land lying within the municipality, or of land within three miles of its corporate limits and not located in any other municipality, shall be filed or recorded until it shall have been submitted to and a report and recommendations thereon made by the planning and zoning commission to the city council and the council has approved the plat. This provision shall be applicable to land within three miles of the corporate limits of the municipality and not located in any other municipality only if the comprehensive plan or major street plan includes such land. However, in the case of such extra municipal land lying

within three miles or more than one first or second class municipality, the jurisdiction of each municipality shall terminate at a boundary line equidistant from the respective corporate limits of such municipalities, unless otherwise agreed to by a majority vote of the governing body of each such municipality. Such plats shall, after report and recommendations of the commissions are made and filed, be approved or disapproved by the city council. The commission shall make its recommendation to the council within sixty days of submission.

This is the first time that we have been called upon to interpret this statute.

[¶ 18.] Rapid City contends that under SDCL 11–6–26, "only if the comprehensive plan or major street plan" of the municipality "includes such land" shall the three mile extra territorial jurisdiction apply. Rapid City further argues that "[i]t is uncontroverted that the major street plan which the City of Box Elder had on file with the Register of Deeds of Pennington County *did not* include [Anderson's and Scheurer's] property." (Emphasis added.) Rapid City contends that because Box Elder's comprehensive plan or major street plan did not include Paradise Estates, Box Elder does not have jurisdiction to file the plat.

[¶ 19.] The record shows that the trial court, while not required to, interpreted the statute in the following manner:

Both Box Elder and Rapid City had [a major street plan] in place when Defendants sought platting approval in Box Elder. If the three mile jurisdictions of two municipalities overlap, "the jurisdiction of each municipality shall terminate at a boundary line equidistant from the respective corporate limits of such municipalities ..." [SDCL 11–6–26]. As a result, if the airport annexation is nullified, Box Elder has platting jurisdiction

by virtue [of] its one tenth of a mile closer proximity to the subject property.

[¶ 20.] Under our rules of statutory construction, we must read the statute as a whole to interpret its meaning. *See Dahn*, 1998 SD 36, ¶ 14, 576 N.W.2d at 539. To further assist this Court in interpreting the meaning of a statute, we must also review other enactments relating to the same subject. *See id.* Such statutory review reveals that SDCL 11–6–11 establishes a municipality's territorial zoning powers within three miles of its corporate limits (extra territorial jurisdiction). *See* SDCL 11–6–11. Further, this statute also includes the "equidistant rule" when this extra territorial land is located within three miles of more than one first or second class municipality. *See id.* SDCL 11–6–26 shows that when a municipality has jurisdiction to approve a plat on property within its three mile zone, the municipality needs a comprehensive plan or major street plan covering the property.

[¶ 21.] The thrust of Rapid City's argument is it had jurisdiction to approve the plat of Paradise Estates because it was first to file a major street plan covering the subject property. The statute does not provide that the first to file in the register of deeds wins the race to control platting. The issue is, does Box Elder have authority to approve the Paradise Estates Plat.

[¶ 22.] There is no question that after the trial court found Rapid City's annexation of the airport invalid, under the equidistant rule, the property falls within Box Elder's jurisdiction. Rapid City argues that a municipality can only approve a plat if the municipality has a comprehensive plan or major street plan which covers the specific property. A review of the record does mention a street plan, but does not specifically determine whether Box Elder's plan included Paradise Estates.[4] Since inclusion within the plan is

---

4. Rapid City had submitted proposed findings of fact and conclusions of law which contained a proposed finding of fact that "[t]he

City of Box Elder has not adopted a major street plan which covers [Paradise Estates]; the major street plan which has been filed by

essential under SDCL 11–6–26, this matter will be returned to the trial court to determine whether there was or is a major street plan covering Paradise Estates. There is no question that under the equidistant rule, Rapid City does not have jurisdiction. Whether or not Box Elder has fully complied with SDCL 11–6–26 is not answered in this record.

[¶ 23.] We affirm the trial court's decision declaring Rapid City's annexation of the Rapid City airport invalid. We reverse and remand with instructions to the trial court to determine whether Box Eld-

er's major street plan includes Paradise Estates.

[¶ 24.] MILLER, Chief Justice and SABERS and GILBERTSON, Justices, concur.

[¶ 25.] KONENKAMP, Justice, deeming himself disqualified, did not participate.

---

the City of Box Elder does not cover such property, stopping approximately one mile to the north." Rapid City's proposed findings were ultimately denied by the trial court. In the trial court's findings of fact and conclusions of law, the court made no finding of fact or conclusion of law as to whether Paradise Estates was covered by Box Elder's street plan. In fact, the trial court found only that Box Elder had filed its major street plan on March 13, 1985. Rapid City filed no objections to the trial court's findings of fact and conclusions of law. We have often stated that " ' "[t]he failure of an appellant to object to findings of fact and conclusions of law or to propose his or her own findings, limits review to the question of whether the findings support the conclusions of law and judgment." ' " *Sutera v. Sully Buttes Sch. Dist.*, 1997 SD 27, ¶ 9, 561 N.W.2d 20, 23 (quoting *Premier Bank, N.A. v. Mahoney*, 520 N.W.2d 894, 895 (S.D. 1994) (quoting *Huth v. Hoffman*, 464 N.W.2d 637, 638 (S.D.1991))). While Rapid City failed to object to the trial court's findings and conclusions, proposed findings and conclusions were filed; therefore, Rapid City has preserved its argument for appeal.