THE PEOPLE *ex rel.* THE COUNTY OF ST. CLAIR *et al.*, Plaintiffs-Appellants,
*v.* THE CITY OF BELLEVILLE, Defendant-Appellee.

Fifth District   No. 79-81

Opinion filed February 15, 1980.

Clyde Kuehn, State's Attorney, of Belleville (John M. Ferguson, Special Assistant State's Attorney, Robert E. Becker, and Jeffrey R. Glass, Assistant State's Attorneys, of counsel), for appellants.

Sprague, Sprague & Ysursa, of Belleville (Robert J. Sprague, of counsel), for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

The People of the State of Illinois, upon the relation of the county of St. Clair, a township, a road district, and two fire protection districts, brought a *quo warranto* action challenging the validity of three annexation ordinances passed by the city of Belleville pursuant to section 7—1—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—8). Following a bench trial, judgment was entered in favor of the defendant city upholding the validity of the ordinances and dismissing the People's complaint. On appeal four issues are raised. In general they relate to the contiguity of the annexed parcels with the annexing municipality and to the annexing municipality's compliance with statutory requirements in two respects, the giving of notice to constituent fire district trustees and the accuracy of the map of the annexed property which must be recorded with the annexation ordinance.

As a prelude to the statement of facts we supply a diagram showing some pertinent features of the tracts and boundaries involved. The diagram is not drawn to scale.

S.74th Street

*Wrong should be 112*

Approx. 1800'[1705'] · · · · ·

Illinois Central Railroad

Illinois State Highway 13

275'

100'

237.5'

237'

← Belleville City Limits

1350' [1158']

Catholic Diocese
90 acre parcel
(desired to be annexed)

Schaumleffel Property
(approx. 25' wide)

TRACT NO. 1

TRACT NO. 2.

TRACT NO. 3

↑ N

OAK
MANOR
SUBDIVISION

U.S. Route No. 460

Within an unincorporated area just to the southwest of the city of Belleville lay a 90-acre tract located in Stookey township and owned by the Catholic Diocese of Belleville. It was proposed as the site of a new Venture store. The city of Belleville and the Catholic Diocese of Belleville subsequently entered into an annexation agreement whereby the city agreed, among other things, to extend its sanitary sewerage system to the proposed Venture store site, to authorize the owner of the site to have a road constructed near it, and to authorize the owner of the site to have both Illinois State Route 13, located on the northern boundary, and U.S. Route 460, located on the southern boundary, improved in order that access might be had from those routes to the site, all at the city's expense.

At the same time the city of Belleville proposed to annex two other tracts. One of these was the Illinois Central Gulf Railroad right of way which bordered the city of Belleville to the south, according to plaintiff, for 1,350 feet, and, according to defendant, for 1,158 feet. It was 100 feet wide and extended, still parallel with the southern municipal boundary, from the southwest corner of the city in a westerly direction into unincorporated territory for a distance of approximately 1,800 feet as far as South 74th Street which runs generally north and south. The other of these tracts proposed for annexation was a narrow strip of property, referred to as the Schaumleffel property, which lay immediately south of the Illinois Central Gulf Railroad right of way and parallel to it. It was approximately 25 feet wide and extended from a point near the southwest corner of the city limits almost to South 74th Street. Immediately south of the Schaumleffel property and parallel to it was Illinois State Highway 13, bordered on its other (south) side by the Catholic Diocese property. The highway was approximately 112 feet wide and, like the Schaumleffel property, extended from a point near the southwest corner of the city limits almost to South 74th Street. Plaintiff's portion of the diagram suggests that the Schaumleffel property and the pertinent part of Illinois State Highway 13 extended as far as South 74th Street although, according to the plat, they did not extend quite that far. The entire western edge of the Catholic Diocese property, however, would have touched South 74th Street if that street had extended so far. According to defendant in its brief, the Schaumleffel property adjoined the Illinois Central Gulf Railroad right of way for approximately 860 feet. The shortest distance between the southwest corner of the city of Belleville and the northeast corner of the Catholic Diocese property was approximately 275 feet.

On September 15, 1976, the Illinois Central Gulf Railroad filed a petition for annexation of the railroad right of way. The next day a copy of the proposed annexation agreement between the Catholic Diocese of Belleville and the city of Belleville was filed. Four days later, on

September 20, 1976, owners of record of the Schaumleffel property filed a petition for annexation of that property. Ten days after that, on September 30, 1976, the Catholic Diocese of Belleville filed a petition for annexation of the 90-acre tract. On October 7, 1976, the Belleville City Council passed four ordinances relating to the annexations: (1) Ordinance No. 3390 annexing the Illinois Central Gulf Railroad right of way; (2) Ordinance No. 3391 annexing the Schaumleffel property; (3) Ordinance No. 3392 adopting the annexation agreement between the city and the Catholic Diocese of Belleville; (4) Ordinance No. 3393 annexing in three tracts the 90 acres of the Catholic Diocese. With the annexation of the Schaumleffel property, the portion of Illinois State Highway 13 adjacent to it was annexed by operation of law (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1).

At trial only two witnesses testified, both land surveyors registered in Illinois. The plaintiff's surveyor, Richard Weinel, testified to errors in both the Schaumleffel and the Catholic Diocese property descriptions which, he said, resulted in errors in the plat attached to the annexation ordinances. The principal error in the Schaumleffel property description arises out of the use of a call line of 437.9 feet which is short by at least 30 feet. The 437.9 feet specified in the description is to be measured from the intersection of the northeasterly right-of-way line of Illinois State Highway 13 with the east line of 74th Street. That call line was correct until Illinois State Highway 13 was widened some years before the annexations at issue. Although the highway was widened by only 12 feet, the road curves at the point of intersection at 74th Street. As a result the wider arc of the right-of-way line throws off the call line of 439.7 feet by 30 to 40 feet. If 439.7 feet is measured from the intersection of the east line of 74th Street with the new northeasterly right-of-way line, the description, according to plaintiff's brief, includes property owned not by the Schaumleffels, who petitioned for annexation, but by a veterinary clinic. The owner of that property did not petition for annexation, nor did the city suppose it was annexing that property. The description and accompanying plat then may include 30 to 40 feet more than the city intended to annex.

The city's witness, John Thompson, who had drawn the plat from the property description, testified that he did indeed use the figure of 439.7 feet from the right-of-way line. He was unable to say, though, whether he used the right-of-way line as it existed before or after the widening of the highway. If he used the old right-of-way line, the plat presumably is in error as to the width of Illinois State Highway 13 by essentially 12 feet. If he used the new right-of-way line, the plat presumably is in error as to the extent of the annexation by 30 to 40 feet.

Plaintiff's witness testified also to an ambiguity in the Schaumleffel

property description occasioned by the 12-foot addition to the highway. The property description provided that the distance of 439.7 feet be measured from a point on the right-of-way line. Prior to the acquisition, no ambiguity existed because the distance could be measured from a point on the right-of-way line. Now that there is no longer a right-of-way line in that place, only the point remains, incapable of sufficiently precise location and, in the opinion of the witness, consequently ambiguous.

Plaintiff's witness testified further to errors in the descriptions of the Catholic Diocese property. By the use of an overlay he had drawn from the legal description in the ordinance of Tract No. 3 of the Catholic Diocese property, he showed that the plat accompanying the ordinance was inaccurately drawn with respect to the easterly line of the south portion of the Catholic Diocese property lying west of Oak Manor Subdivision. A major source of the difficulty appears to be that the plaintiff's witness who surveyed and platted part of the Oak Manor Subdivision used the center of the creek which flows there as the subdivision boundary line only in part. For the rest, instead of following the meanders along the center line, he ran straight lines in order to accord with the wish of the property owner that costs be cut. When the city's witness later attempted to draw the annexation plat, he used the property description contained in the annexation ordinance which was based not on any description of the plaintiff's witness but on older descriptions which follow the meanders. Once the city's witness became aware that the pieces of property did not abut according to the descriptions he was working from, he attempted to but could not discover the cause of the discrepancy either by searching the courthouse records or by consulting a title company. Given his research and the title company's assumption that the ownership and boundary lines were the same, he too assumed that the easterly line of the Catholic Diocese property coincided with the westerly line of Oak Manor Subdivision and drew the plat according to that assumption and not from the property description contained within the annexation ordinance. As a result the plat is inaccurate in that it does not reflect the property description of Tract No. 3, and the property description of Tract No. 3 is inaccurate in that it does not reflect the use of straight lines instead of meanders. If the plat had been drawn in accord with the property description of Tract No. 3 in the annexation ordinance, itself erroneous for following the meanders, the Catholic Diocese property and Oak Manor Subdivision would not abut as they appear to do on the plat accompanying the ordinance. Were the plat accurately drawn, the Catholic Diocese property at times would not quite abut Oak Manor Subdivision and at other times would encroach somewhat upon some lots within the subdivision. The city's witness seemed to indicate at one point in the testimony that the amount of the discrepancy along this

boundary varied from about five to 15 feet. It seems a fair conclusion drawn from the testimony, though it was not expressly stated, that were the Catholic Diocese property description correct, the Catholic Diocese property and Oak Manor Subdivision would abut.

Plaintiff's witness also testified to an inconsistency between the property descriptions of Tracts Nos. 2 and 3 of the Catholic Diocese property and the plat. The property descriptions exclude part of the right of way of U. S. Route 460 while the plat includes the entire right of way.

With these facts in mind we turn to the issues raised on appeal. The plaintiff first contends that the annexation of the Illinois Central Gulf Railroad right of way constitutes strip or corridor annexation which is forbidden in Illinois. By the plaintiff's view the city annexed the railroad right of way for the purpose of attaining contiguity with property otherwise not contiguous to the city and not properly the subject of annexation by it.

■■ The test of contiguity in cases relating to strip annexation of privately owned tracts generally has been whether there is a touching or adjoining of the property of the annexing body and the property sought to be annexed in "a reasonably substantial physical sense." (*In re Annexation to Village of Buffalo Grove* (1970), 128 Ill. App. 2d 261, 265, 261 N.E.2d 746, 749; *In re Annexation to Village of South Barrington* (1972), 7 Ill. App. 3d 958, 289 N.E.2d 1; *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 167 N.E.2d 169.) The width of the connector and the length of the projection beyond preannexation boundaries are also relevant to the determination of contiguity. (*In re Annexation to Village of Buffalo Grove.*) In *Buffalo Grove*, for example, the court found that where a strip of farmland 300 feet wide bounded the annexing municipality for a distance of 675 feet—approximately half the distance the railroad right of way bounds the annexing municipality in the instant case—and extended about 1,300 feet beyond the preannexation boundaries of the village to a large tract of property sought to be annexed, the contiguity requirement was met.

In the case from which courts have derived their principal guidance in the matter of highway annexations, *People ex rel. Adamowski v. Village of Streamwood* (1959), 15 Ill. 2d 595, 601, 155 N.E.2d 635, 638, the village had attempted to annex 75 contorted miles of roadway in order to reach the property sought to be annexed. That property was located several miles from the village limits and was not only not contiguous to the village but was, in fact, contiguous to another municipality. Annexation of roadway coextensive with the village boundary was not a subject of the *Streamwood* case. Finding insufficient contiguity, the court set forth the "adjacent and parallel" test of contiguity for highway annexations:

"The law * * * provides for the annexation of territory, even if it is dedicated for street or highway purposes, if the territory is contiguous to the municipality and is not part of any other municipality. The word 'contiguous,' as used in that statute, must be defined in keeping with what was the obvious intention of the legislature, which was to make it permissible for a municipality to annex a roadway where, for example, a roadway separates a municipality from territory just the other side of the roadway, which the municipality needs for existing municipal purposes and for natural growth, even though no part of·the roadway already lies within the municipality. Contiguous * * * must mean contiguous in the sense of adjacent to and parallel to the existing municipal limits and cannot, under any circumstances, permit a municipality by annexation ordinances to grab a whole maze of roadways, circumscribing and choking off unincorporated areas and causing them to be completely surrounded by a maze of roadways annexed to a municipality." (15 Ill. 2d 595, 601, 155 N.E.2d 635, 638.)

Implicit in the *Streamwood* requirement that the highway be adjacent and parallel appears to be the notion of a substantial physical touching of the annexing body and the highway.

*Streamwood* has been most readily applied to those situations where the highway to be annexed and the annexing body meet perpendicularly, and that part of the test requiring that the highway be parallel cannot possibly be met. (See *People ex rel. Marre v. Countryside Sanitary District* (1972), 5 Ill. App. 3d 747, 284 N.E.2d 308; *Wescom, Inc. v. Woodridge Park District* (1977), 49 Ill. App. 3d 903, 364 N.E.2d 721.) Without the requirement that the highway be parallel, it would be virtually impossible for a long strip of highway meeting an annexing municipality perpendicularly—with only its width contiguous to the municipality—to meet the requirement of a "substantial common boundary." *People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill. App. 2d 275, 286, 256 N.E.2d 653.

We, however, are not presented with a perpendicular joining of municipality and highway but with a railroad right of way indisputably parallel and adjacent to the annexing body for a distance of 1,350 feet which then extends beyond the corporate limits into unincorporated territory where it adjoins for an additional 1,800 feet other property sought to be annexed. The plaintiff relies heavily upon its claim that the rule of *Streamwood* has been applied to invalidate not only perpendicular abutments but also parts of annexations of highways bearing the same relation to the municipality that that part of the railroad right of way extending beyond the municipality bears to the city of Belleville in the

instant case. Plaintiff thereby concludes that *Streamwood* and the cases which follow it prohibit the annexation of part of a highway which is not coterminous with the preannexation municipal boundary.

In *People ex rel. Coojar Realty Corp. v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 203, 225 N.E.2d 39, the first of the cases which plaintiff relies upon for this proposition, the village had earlier annexed a 300-foot-wide highway adjoining its border and extending from the preannexation limits of the village for half a mile. The village later attempted to annex two areas adjoining the previously annexed highway at the end of the highway, that is, half a mile distant from the preannexation village limits. The court found the highway not adjacent and parallel and declared the highway annexation invalid as strip annexation. In the second of the cases plaintiff cites for this proposition, *In re Annexation to City of Springfield* (1967), 85 Ill. App. 2d 191, 228 N.E.2d 755, the city annexed a roadway 40 feet wide extending 2,640 feet—half a mile—into unincorporated territory in order to reach the parcels sought to be annexed. The court found the roadway not parallel and adjacent and the annexation accordingly impermissible. It is not clear in either case whether the highway involved was parallel to the municipal boundary for a considerable distance in the manner of the railroad right of way in the case at bar, or whether the highway abutted the preannexation municipal boundaries perpendicularly. What is clear, and we think more significant, is the half-mile corridor each highway would have created to reach the property sought to be annexed.

In *Wescom, Inc. v. Woodridge Park District* (1977), 49 Ill. App. 3d 903, 364 N.E.2d 721, the court was asked to consider the attempted annexation of a 120-foot-wide utility right of way by a park district in order to reach and annex a 72-acre tract 6,240 feet distant. The park district and the easement were coterminous for only the width of the easement, that is, for 120 feet. The two abutted perpendicularly. Relying especially upon the cases of *Buffalo Grove* and *Streamwood*, the court objected particularly to the 120-foot strip through unincorporated territory in order to reach property distant from the annexing park district. Of the test for contiguity the court said:

> "The test of whether annexed territory is contiguous to and adjoins the municipality remains the same: is there a touching or adjoining in a reasonably substantial physical sense? Among the factors to be considered in that determination are the extent of a common boundary between the areas, the length of the projection of the annexed territory beyond municipal boundaries and, in this case, whether such projection extends perpendicular to or is parallel with such boundaries." 49 Ill. App. 3d 903, 907, 364 N.E.2d 721, 724.

■■ These three cases, together with *Streamwood*, indicate that a major concern of the court in strip or corridor annexations is, as the name suggests, that the highway not form a narrow corridor reaching to distant tracts; that is, that a "dumbbell effect" not be created. Such cannot be said to have been attempted here. The Schaumleffel tract is distant from the city limits merely across the *width* of the railroad right of way, approximately 100 feet. Even if the railroad right of way, the Schaumleffel property, and Illinois State Highway 13 are considered as a unit, the Catholic Diocese property sought to be annexed is not more than 275 feet from the city limits. Moreover, the Catholic Diocese property is located across, not at the terminus of, the intervening properties. No dumbbell effect is apparent.

■■ Plaintiff cites *People ex rel. Freeport Fire Protection District v. City of Freeport* (1978), 58 Ill. App. 3d 314, 374 N.E.2d 479, where the issue essentially was cornering or point-to-point annexation, also forbidden in Illinois. The plaintiff argues on the basis of *Freeport* that annexation of any part of a highway extending away from the municipal limits is impermissible. However, it is important to remember that cornering or point-to-point annexation is precisely that. A point at the corner of the property to be annexed is the only place where that property and the annexing property touch. (See *Western National Bank v. Village of Kildeer*; *Wild v. People ex rel. Stephens* (1907), 227 Ill. 556, 81 N.E. 707; *People ex rel. Hanrahan v. Village of Wheeling* (1976), 42 Ill. App. 3d 825, 356 N.E.2d 806.) Obviously there can be no substantial touching to meet requirements of contiguity under such circumstances. The instant annexation may not be said to be an instance of cornering. The Schaumleffel property has a common boundary with the railroad right of way, according to the defendant, of 860 feet, and, according to the plaintiff's diagram, of 1,800 feet. Had the city annexed the railroad right of way only as far as the northeast corner of the Schaumleffel property and proceeded to attempt to annex the Schaumleffel property touching the municipal limits only at that corner, that would have presented a case of cornering or point-to-point touching. But such is not the case.

■■ In the instant case, by comparison, the railroad right of way has a common boundary with the city of Belleville for a distance of 1,158 feet, according to defendant, or 1,350 feet, according to plaintiff. Although the entire length of the projection is 1,800 feet, the distance between the annexing municipality and other property sought to be annexed is only 100 feet. The projection may hardly be said to project through unincorporated territory to reach distant property. Finally, the projection is parallel with and not perpendicular to the municipal boundary, touching it for a considerable distance; a different matter than merely abutting the municipal boundary perpendicularly for its width. We find that

the annexation of the Illinois Central Gulf Railroad right of way adjoins the city of Belleville in a reasonably substantial physical sense, being both parallel and adjacent to it, and therefore hold that such an annexation does not constitute strip or corridor annexation but, rather, satisfies the statutory requirement of contiguity.

The plaintiff next contends that the annexation of the Schaumleffel property was illegal and therefore void because the requisite contiguity between the Schaumleffel property and the city of Belleville was lacking.

Section 7—1—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—8) provides:

> "Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality * * * may be annexed to the municipality in the following manner * * *."

For the contiguity requirement plaintiff cites section 7—1—1 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1) as the "general section." However, we rely upon section 7—1—8 for the statement of the contiguity requirement, virtually identical to that of section 7—1—1, because the instant annexations were expressly undertaken pursuant to section 7—1—8 which governs out-of-court annexation.

The second contention is advanced because plaintiff maintains that property to be annexed must be contiguous to the annexing municipality at the time the petition for annexation of that property is filed. Since the Illinois Central Gulf Railroad right of way was not annexed until October 7, 1976, and was not therefore within the corporate limits of the municipality until that date, plaintiff asserts that the Schaumleffel property was not contiguous to the city at the time the annexation petition for the Schaumleffel property was filed on September 20, 1976. Plaintiff concludes that the contiguity requirement for annexation under section 7—1—1 of the Code has not been met, rendering the transaction void. For the same reason plaintiff concludes that the Catholic Diocese property annexation is void, its annexation petition having been filed on September 30, 1976. The narrow issue then regarding plaintiff's second contention is whether property to be annexed must be contiguous to the annexing municipality at the time the petition for annexation of that property is filed where the annexation proceeding is undertaken pursuant to section 7—1—8 of the Municipal Code.

Plaintiff's counsel misapprehends the law with regard to the issue of whether contiguity must exist between the annexing municipality and the property to be annexed at the time of filing the petition for annexation. Counsel declares that "Illinois courts have consistently held * * * that contiguity must be determined *as of the time of the filing* of the petition for annexation of the particular territory in question," citing for that

proposition *People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill. App. 2d 275, 256 N.E.2d 653; *Winfield Fire Protection District v. City of Wheaton* (1975), 29 Ill. App. 3d 630, 332 N.E.2d 43; and *In re Annexation to City of Springfield* (1967), 85 Ill. App. 2d 191, 228 N.E.2d 755.

Our research discloses not only that Illinois courts have not held consistently in this matter but also that quite different statements of the law appear in two of the three cases counsel cites. *People ex rel. Cherry Valley Fire Protection District v. City of Rockford* does not say that contiguity must exist at the time of filing of the annexation petition but, rather, that "under the provisions of section 7—1—8 the sufficiency of the petition for annexation is determined at the time of the *passage* of the ordinance of annexation." (Emphasis supplied.) Similarly *Winfield Fire Protection District v. City of Wheaton,* in a disconnection matter, says of the sufficiency of a petition for annexation:

> "The underlying rationale for these decisions become [*sic*] evident when annexation proceedings are compared to disconnection proceedings. In annexation proceedings the municipality must ascertain whether the facts presented in a particular annexation petition show compliance with statutory prerequisites before it may exercise its annexing power. Since it is jurisdictional with the passage of the annexation ordinance that contiguity be present, the sufficiency of the petition must be determined at the time of the passage of the ordinance rather than at a subsequent time." (29 Ill. App. 3d 630, 634, 332 N.E.2d 43, 47.)

*In re Annexation to City of Springfield* does hold that contiguity is required at the time of the filing of the petition. However, the annexation there attempted, unlike those of the case at bar and *Cherry Valley Fire Protection District* was one sought to be accomplished with the aid of court pursuant to section 7—1—4 of the Code. The petition there was required to be filed with the court at the commencement of the court proceeding.

In another case, not cited by plaintiff, *People ex rel. Hanrahan v. Village of Wheeling* (1976), 42 Ill. App. 3d 825, 356 N.E.2d 806, involving a section 7—1—8 annexation, that is, an annexation accomplished without the aid of court, the court indicated that contiguity should exist at the time the petition for annexation is filed, citing for the proposition *In re Annexation to City of Springfield,* involving a 7—1—4 annexation.

■■ We think that the better authority for a section 7—1—8 annexation is the case specifically dealing with a 7—1—8 annexation, *Cherry Valley Fire Protection District.* Therefore, we hold that contiguity must exist

only at the time of passage of the annexation ordinance and need not exist at the time of filing the petition for annexation.

■■ The annexation ordinances relating to the properties here involved were passed on the same day and the numbering of the ordinances indicates that the Illinois Central Gulf Railroad right-of-way annexation ordinance, Ordinance No. 3390, was passed immediately prior to the passage of the Schaumleffel property annexation ordinance, Ordinance No. 3391, and the passage of the Schaumleffel property annexation ordinance, in turn, occurred prior to that of the Catholic Diocese property, Ordinance No. 3393. Consequently each of the properties sought to be annexed was in fact contiguous to the city of Belleville at the time of annexation, that is, at the time the ordinance annexing each parcel was passed. We assume that the ordinances were passed in the order in which they are numbered. No evidence was submitted to the contrary.

The plaintiff's other contentions go to the city's failure to comply strictly with the statutory requirements, first, of notice to fire protection district trustees pursuant to section 7—1—1 of the Municipal Code and, second, of the accuracy of both the property description of an annexation ordinance and the attached plat. Regarding notice to fire protection district trustees, section 7—1—1 provides:

> "When any land proposed to be annexed is part of any Fire Protection District * * *, and the annexing municipality provides fire protection * * *, the Trustees of each District shall be notified in writing by certified or registered mail before any court hearing or other action is taken for annexation. Such notice shall be served 10 days in advance."

Regarding the description and map of the annexed territory, section 7—1—8 provides:

> "The corporate authorities of the municipality to which annexation is sought shall then consider the question of the annexation of the described territory. * * * A copy of the ordinance annexing the territory together with an accurate map of the annexed territory shall be recorded with the recorder of deeds and filed with the County Clerk within the county wherever the annexed territory is located."

In essence the plaintiff's position with respect to the requirements of these statutes is that only the strictest compliance is sufficient. Less than that is of no avail. Because the statute calls for notice to fire protection district trustees, notice to only a majority of the trustees constitutes failure to comply and therefore voids the annexation of the property served by the fire protection district. Plaintiff claims similarly that because the statute calls for a description and an accurate map of the annexed

territory to be recorded and filed that the descriptions and plat recorded and filed herein containing the errors delineated above constitutes failure to comply and therefore voids the annexation of property included in the defective map.

■■ Prior to passage of the ordinances of annexation two of the three trustees of each of the two fire protection districts serving the area to be annexed received notice that a hearing regarding these annexations would be held in not less than 10 days. By an error the third trustee in each of the two districts was omitted. In each instance the city served notice to a third-person former trustee who was no longer serving as trustee to the district. The names of the trustees had been provided to the city by the county clerk who was at the time unaware that those names did not represent the current composition of the board of trustees of the two fire protection districts. Plaintiff acknowledges in its brief that the duty of notifying the county clerk of a change in trustee personnel lies with the appointing authority for each district, in this case with the Board of Town Auditors for the Villa Hills Fire Protection District and with the St. Clair County Board for the Signal Hill Fire Protection District. Thus, the error in serving the wrong third trustee cannot be attributable to the annexing authority.

Plaintiff argues that the inadvertent omission of one of the three trustees of each fire protection district nullifies the entire annexation proceedings. We cannot agree. In the case of *In re Annexation to Village of Wadsworth* (1976), 35 Ill. App. 3d 957, 343 N.E.2d 57, *rev'd on other grounds* (1976), 65 Ill. 2d 148, 357 N.E.2d 504, the court found that where notice of annexation proceedings was sent to two of the three trustees of the fire protection district and to the fire protection district itself, the omission was but a formal defect in the mandatory notice requirement. On the other hand, the notice requirement was found not to have been complied with in *People ex rel. Hopf v. Village of Bensenville* (1971), 132 Ill. App. 2d 907, 272 N.E.2d 50, where trustees of the fire protection district were given notice *after* the adoption of the ordinance of annexation but not before. Similarly, the notice requirement was found not to have been met in *In re Annexation to Village of Green Oaks* (1978), 58 Ill. App. 3d 842, 374 N.E.2d 854, where only one trustee of the district received notice. In the instant case, as the trial court pointed out, a *majority* of the trustees received notice so that they were able to protect the interests of the fire protection district. That coupled with the fact that the omission occurred through no fault of the city which made every reasonable effort to comply leads us to conclude that the defect here, as in *Wadsworth*, was formal only and that substantial compliance with the statutory requirement was had. The facts of the *Village of Bensenville* and *Village of Green Oaks* cases render them inapposite.

■■ With regard to the plaintiff's claim that the content of the notices failed to comply strictly with statutory requirements because it did not include the time and place of the public hearing to be held on the annexation petitions, we observe that the statute does not seem to require more than that notice that the territory is proposed to be annexed be given in writing to the trustees 10 days before any court hearing or other action is taken for annexation (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1). That was done here and we find sufficient compliance with the statute.

■■ Plaintiff's final contention is that the annexation proceedings should be deemed null and void for the city's failure to comply with statutory requirements because inaccuracies appeared in the property descriptions and the plat. In *People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, 66, 177 N.E.2d 313, the court said:

> "Descriptions of municipal boundaries are not construed with the same strictness as those contained in deeds and contracts [citation] and if the incorporating petition and accompanying map, when viewed together, fairly apprise the public of the property involved, the description will be considered proper."

This rule has since been applied to legal descriptions contained in annexation ordinances and accompanying maps by *People ex rel. Rogers v. City of Park Ridge* (1967), 86 Ill. App. 2d 82, 230 N.E.2d 289, and *In re Annexation to Village of South Barrington.* Having considered the facts outlined above and particularly the fact that neither the veterinary clinic nor, apparently, any homeowners in the Oak Manor Subdivision believed that their property was being annexed and the further fact that the city did not believe it was annexing any of the property erroneously included, we think that the legal descriptions and the plat may be said to have fairly apprised the public of the property to be annexed and that they were accurate within the purview of the statute.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.