The STATE of Delaware, upon the relation of the DEPARTMENT of TRANSPORTATION, and George W. Williams, Utley W. Roberts and Wilma W. Roberts, individuals, Plaintiffs,

v.

CITY OF MILFORD, Municipal corporation of the State of Delaware, Joseph R. Rogers, as Mayor of the City of Milford, and John F. Frederick, as City Manager of the City of Milford, Defendant.

Civ. A. No. 1008–K.

Court of Chancery of Delaware, Kent County.

Submitted: June 15, 1989.
Decided: Aug. 7, 1989.

Frederick H. Schranck, Deputy Atty. Gen., for State, plaintiff, upon the relation to Dept. of Transp.

William J. Walls, Jr., Hindman & Walls, Dover, for individual plaintiffs.

James A. Fuqua, Jr., Fuqua and Graves, Georgetown, for defendants.

## OPINION

JACOBS, Vice Chancellor.

At issue on the pending cross motions for summary judgment is the validity of an annexation of land by the City of Milford ("the City"). The plaintiffs are the State of Delaware, which brings this action on behalf of its Department of Transportation, and certain individuals whose property is the subject of the challenged annexation.

On July 21, 1988, the plaintiffs filed a verified complaint seeking a declaratory judgment, and injunctive and other relief, to invalidate the annexation of certain properties, roads, and rights of way, which the defendants (who are the City, its Mayor, and its City Manager) have proposed. On August 13, 1988, the parties formally stipulated that the defendants would take no action in furtherance of the annexation without giving plaintiffs thirty days' prior notice of their intent to do so.

Defendants subsequently gave notice of their intent to annex, and on February 16, 1989, the plaintiffs moved for a preliminary injunction to block the proposed annexation. Oral argument on that motion took place on February 27, 1989, but the parties subsequently agreed to, and the Court approved, a procedure for expedited final de-

termination. It was agreed that the *status quo* would be preserved during the interim, and in accordance with that agreement, all parties moved for summary judgment pursuant to Rule 56. This is the decision of the Court on the parties' cross motions for summary judgment.[1]

### I.

The material facts are undisputed. The City of Milford is a municipal corporation of the State of Delaware. Under its Charter, which is codified at 61 *Del.Laws*, ch. 156 (1977), the City is authorized to annex territory "contiguous" to its then existing limits and boundaries. Pursuant to Article X(b) of that Charter, the Milford City Council adopted an annexation proposal by a two thirds majority vote on June 13, 1988, and, on July 14, 1988, it caused a special election to be held among the residents and property owners in the territories to be annexed. That election resulted in an eight to three majority vote in favor of the annexation.[2]

At issue is whether the land proposed to be annexed is "contiguous" to the City's existing boundaries, within the meaning of Article X(b) of the Milford City Charter. To better understand the significance of the facts creating that issue, the existing city boundaries (which are shown in boldface black) and the areas proposed to be annexed (which are shown in crosshatching) are depicted on the diagram below.

1. The plaintiffs have also moved for attorneys' fees. Because briefing on that motion is not completed, the fee application is not addressed in this Opinion.

2. Plaintiff Utley W. Roberts, through an error by the City, was not permitted to vote in that election. Although plaintiff contends that the election should be voided because of that error, all parties agree that even if Mr. Roberts had been permitted to vote, the result would not have changed. Therefore, this argument also will not be addressed.

## GENERAL DESCRIPTION OF ANNEXATION

As the foregoing diagram indicates, the areas sought to be annexed consist of both privately owned, rectangular shaped properties (Plats 1, 2, 3, 4, 5, 6, and 7) and of rights of way that are owned by the State (U.S.Rt. 113, Rt. 1 Bypass, Rt. 1 BR, and Rd. 211). With one exception (Plat 7), none of the rectangular-shaped properties is contiguous to (*i.e.*, none of them touches) the City's existing boundaries. Rather, those properties are contiguous only to other to-be-annexed areas, namely, the rights of way, of which only a narrow, few-feet-wide portion physically touches existing City boundaries. The overall effect is that the to-be-annexed parcels of land are connected only remotely to the City, as part of a "spiderweb" of annexed roadbeds radiating out from the City's boundary line from

four separate—and quite narrow—connecting points.

The use of a thin strip of land to connect a disembodied parcel of land to a municipality has been variously characterized as "corridor," "strip," "shoestring," or "long lasso" annexation. Those descriptions are a shorthand reference to the use of long, radiating strips which intersect municipal boundaries for only a relatively narrow, short distance, as a means of annexing an otherwise disembodied, distantly-placed territorial area. The resulting appearance has been described as a balloon on a string, a dumbbell, or a spider-web.

## II.

Cross motions for summary judgment will be granted only where no genuine issue of material facts exists and one of the parties is entitled to judgment as a matter of law. *Empire of America Relocation Services, Inc. v. Commercial Credit Co.*, Del.Supr., 551 A.2d 433, 435 (1988); *Wilson v. Joma, Inc.*, Del.Supr., 537 A.2d 187, 188 (1988). Because in this case the pertinent facts are undisputed, those conditions are here satisfied. Thus, this case is appropriate for summary judgment, a procedure whose purpose is to prevent needless trials where there is no material fact issue. *Wilmington Sixth Dist. v. Pettinaro Enterprises*, Del.Ch., C.A. No. 8668, Hartnett, V.C., 1988 WL 116496 (Oct. 27, 1988), slip op. at 7.

The sole issue on these motions is legal, and may be stated thusly: in what manner does the term "contiguous," as used in the City Charter of Milford, delimit the configuration of territory that the City may validly annex? The sole limiting principle imposed by the City's Charter is that the annexed territory must be "contiguous to the then limits and territory of the City of Milford." Article X, Subsection (b), 61 *Del Laws*, ch. 156 (1977) at 521. Because the word "contiguous" is neither defined nor otherwise explained, and because no Delaware court has yet interpreted that term in this context, a clear legal dispute exists as to the meaning of that word.

The plaintiffs contend that "contiguous" should be interpreted to require more than that the to-be-annexed territory and the existing municipal boundary physically touch at some narrow point. To satisfy the contiguity requirement, plaintiffs argue, the annexed territory should share a common boundary with the existing city boundary; that is, the boundaries of the annexed land and of the City should either touch at every point, or, at the very least, should share a substantial common boundary. As discussed more fully in Part III below, the majority of courts that have addressed this issue adopt the plaintiffs' point of view. *See Annot., Municipal Corporations—Annexation*, 49 A.L.R.3d 589, 613 (1973).

The defendants disagree, arguing that the required degree of "contiguity" is a legislative, not a judicial, determination. They urge that in the absence of a specific Charter provision prescribing the required degree of "contiguity," any annexation that satisfies that term's literal, dictionary definition (*i.e.*, touching at any single point) must be judicially validated. Stated differently, the defendants argue that so long as the to-be-annexed land touches the City's boundaries at some point, the annexation must be upheld, no matter how small or narrow that common point may be. That position represents the so-called "minority" view. *Id.*

For the reasons now discussed, this Court concludes that an interpretation of the "contiguity" requirement that proscribes corridor annexation is the more sound construction of the contested City Charter provision. Accordingly, the annexation proposed by the City must be deemed invalid as not complying with the contiguity requirement of the City Charter.

## III.

I first address a threshhold issue, which is whether this court should intervene further in this controversy. That issue flows from the City's argument that the term "contiguous" is clear and unambiguous, and, accordingly, that any restriction upon the City's ability to annex land can be imposed only by the legislature.

■ The Court agrees that the requirements for a valid annexation are for the legislature to prescribe. It is the function of the General Assembly, not the courts, to determine as a matter of policy what annexation powers, and what limitations on those powers, are appropriate for a municipality to adopt. Only if the legislative enactment is ambiguous and susceptible of different conclusions or interpretations will the courts have any role. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del.Supr., 492 A.2d 1242, 1246 (1985).

■ In this case it is regrettably apparent that the term "contiguous," as used in the Milford City Charter, is ambiguous. The legislature has not defined that term, and existing Delaware case law has not afforded guidance as to the degree of contiguity required for a land configuration to be validly annexable. As evidenced by this very case, the Charter provides no guidance as to whether, to be validly annexable, the outlying land must share a common boundary with the existing City boundary for (i) all of the annexed land's length, (ii) for a substantial portion of that length, (iii) or at any single point, however insignificant that point may be in relation to the overall dimensions of the annexed parcel.

Finally, the differing conclusions reached by other jurisdictions demonstrate that "contiguous" has a meaning that is far from clear. As earlier noted, a majority of courts have interpreted "contiguous" to disallow "corridor" or "shoestring" annexation. *See, e.g., City of Fultondale v. City of Birmingham*, Ala.Supr., 507 So.2d 489 (1987); *Clark v. Holt*, 218 Ark. 504, 237 S.W.2d 483 (1951) (construing the term "contiguous and adjoining"); *Potvin v. Village of Chubbuck*, 76 Idaho 453, 284 P.2d 414 (1955); *Spaulding School Dist. No. 58 v. City of Waukegan*, 18 Ill.2d 526, 165 N.E.2d 283 (1960); *People ex rel. County of St. Clair v. City of Belleville*, 81 Ill. App.3d 379, 37 Ill.Dec. 41, 401 N.E.2d 1134 (1980); *Wescom, Inc. v. Woodridge Park Dist.*, 49 Ill.App.3d 903, 7 Ill.Dec. 560, 364 N.E.2d 721 (construing statute authorizing annexation of territory "adjoining" district, holding that term synonymous with "contiguous"); *Reafsnyder v. City of Warsaw*, 155 Ind.App. 455, 293 N.E.2d 540 (1973); *Ridings v. City of Owensboro*, Ky., 383 S.W.2d 510 (1964); *Township of Owosso v. City of Owosso*, 385 Mich. 587, 189 N.W.2d 421 (1971); *Township of Genessee v. Genessee County*, 369 Mich. 592, 120 N.W.2d 759 (1963); *Town of Mt. Pleasant v. City of Racine*, 24 Wis.2d 41, 127 N.W.2d 757 (1964). As also noted, some jurisdictions have adopted the contrary point of view that "corridor" annexation does not violate the statutory requirement of contiguity. *Glick v. Town of Gilbert*, Ct.App., 123 Ariz. 395, 599 P.2d 848 (1979); *Taylor v. City of Chandler*, Ct.App., 17 Ariz.App. 346, 498 P.2d 158 (1972); *City of Safford v. Town of Thatcher*, Ct.App., 17 Ariz.App. 25, 495 P.2d 150 (1972); *State ex rel. Averna v. City of Palm Springs*, 51 Cal.2d 38, 331 P.2d 4 (1958); *People ex rel. Forde v. Town of Corte Madera*, 115 Cal.App.2d 32, 251 P.2d 988 (1952); *Bryant v. City of Charleston*, 295 S.C. 408, 368 S.E.2d 899 (1988); *City of Wichita Falls v. State ex rel. Vogtsberger*, Tex.Supr., 533 S.W.2d 927 (1976); *Fox Dev. Co. v. City of San Antonio*, Tex.Supr., 468 S.W.2d 338 (1971).

Because the questioned City Charter provision is ambiguous, this Court must, therefore, interpret or construe that provision in order to decide this case. In performing that function, this Court will not presume to determine policy issues that are properly the function of the General Assembly. However, in the absence of legislative guidance, the Court is required to choose among conflicting interpretations of the statute in order to ascertain the legislature's intent. In performing that function, the Court may reject a literal interpretation that would lead to consequences so unreasonable or absurd that they could not have been intended by the legislature. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d at 1246.

## IV.

■ The policy rationale of the decisions upholding corridor annexation is that annexation is entirely a legislative function

with which courts should rarely interfere, and that by the choice of the term "contiguous," the legislature intended for the voters of the municipality, and of the territory to be annexed, to determine whether the proposal is in their best interests. *See City of Safford v. Town of Thatcher,* 495 P.2d at 152–153; *People ex rel. Forde v. Town of Corte Madera,* 251 P.2d at 995; *Bryant v. City of Charleston,* 368 S.E.2d at 900. In such jurisdictions, the court's function is limited to reviewing whether the municipality and the territory to be annexed have a common boundary. If a common boundary is found to exist, the annexation will not be disturbed regardless of how insubstantial the common boundary may be, unless the Court finds that the annexation involved a violation of law or a fraud perpetrated in the matter of the boundaries or the extent of the annexed district. *People ex rel. Forde v. Town of Corte Madera,* 251 P.2d at 995–996.

That approach to annexation lent itself to abuses. In *State ex rel. Graves v. City of Sulphur Springs,* Tex.Ct.Civ.App., 214 S.W.2d 663 (1948), a city annexed a long, narrow corridor of land, 800 feet wide and two miles long. The corridor had no apparent reasonable relationship to the city's growth needs, and was annexed for the apparent sole purpose of gaining additional taxation revenue. Reluctantly affirming a lower court decision dismissing a challenge to the annexation, a majority of the Texas Court of Appeals expressed the view that no municipality should have unbridled legislative authority to annex adjacent territory that bears no reasonable relationship to the city's needs. The majority voted, nonetheless, to affirm because it felt itself bound by case precedent. *Id.* at 665. The dissenting minority urged that judicial review should not be so narrow. It emphasized that to allow municipalities arbitrarily or unreasonably to annex territory in any shape, would encourage cities to extend their limits in a mad, competitive scramble to acquire additional taxable property. *Id.* at 666. The minority opinion noted further that if a city were permitted to extend its boundaries by a strip 800 feet wide and two

miles long, then nothing would prevent a similar extension of its boundaries by ten or even fifty miles, resulting in an octopus-like configuration.

Abuses such as those augured by the dissenting opinion in *State ex rel. Graves v. City of Sulphur Springs,* did, in fact, occur. In *City of Burlingame v. San Mateo County,* 90 Cal.App.2d 705, 203 P.2d 807 (1949), a California court upheld the annexation of a 100 foot wide, 2.8 mile long horseshoe strip that completely surrounded unannexed property and intersected municipal boundaries on both ends, thereby preventing the annexation of the surrounded property by any other city. In *City of Safford v. Town of Thatcher, supra,* the Arizona Court of Appeals upheld the annexation of a fifty-foot wide strip that was used to encircle 2,180 acres of farm land that was not to be annexed. The "literal" approach to the "contiguity" requirement also led to inevitable conflicts between municipalities. Such conflicts prompted the Alabama Supreme Court, which twice before had permitted corridor annexation, to reverse its position, prompted by a city's attempt to annex unincorporated property that had been previously choked off by earlier "spider-web" annexations of highways by two other cities. *See City of Fultondale v. City of Birmingham,* 507 So.2d at 491 (holding highway annexations made to gain "contiguity" invalid as matter of law).

These difficulties generated both legislative and judicial reactions. The legislatures of California and Texas enacted statutes designed to address certain of those abuses.[3] As earlier noted, the Alabama Supreme Court overruled two of its earlier decisions that allowed the "long lasso" method of annexation that "invite[d] abuse and substantial problems," which had occurred in that very case. *Id.*

Presumably mindful of the experience in the jurisdictions that had allowed corridor annexation, the courts of a majority of the jurisdictions that considered the issue, have rejected that annexation approach. *See* cases cited at p. 622 *supra.* The rationale

---

**3.** That legislation is described in *City of Wichita Falls v. State ex rel. Vogtsberger,* 533 S.W.2d at

929, n. 1, and *People ex rel. Forde v. Town of Corte Madera,* 251 P.2d at 996.

underlying those decisions is that such annexations "in reality are no more than isolated areas connected by means of a technical strip of a few feet wide ... a result [that] tends to create crazy-quilt boundaries which are difficult for both city and town to administer." *Town of Mt. Pleasant v. City of Racine,* 127 N.W.2d at 760. Such annexation methods have been found unreasonable and not fairly attributable to legislative intent, because they run counter to the very concept of a municipality, which is

> that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants— that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest, because residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation.

*Clark v. Holt,* 237 S.W.2d at 485; *accord, Reafsnyder v. City of Warsaw,* 293 N.E.2d at 545; *City of Fultondale v. City of Birmingham,* 507 So.2d at 491; *Town of Mt. Pleasant v. City of Racine,* 127 N.W.2d at 760.

On that basis a corridor annexation was invalidated in *City of Fultondale v. City of Birmingham,* because such annexations "do not create a collective body of inhabitants, but, rather, several bodies scattered across an area, a result we feel the legislature did not intend." 507 So.2d at 491. In *Reafsnyder v. City of Warsaw,* the Indiana Court of Appeals similarly held that

> if an alleged contiguity is superficial, a subterfuge or a pretext to extend boundaries which results in a territorial appendage that has little relationship to the compactness and unity of the city, the annexation is invalid.

293 N.E.2d at 545.

In the instant case, after having considered the briefs and arguments submitted by both sides, the Court concludes that the "majority" view of the contiguity requirement represents the more sound, well-reasoned interpretation of the Milford City Charter. That conclusion should not

be misread as this Court's judgment as to what is the better legislative policy choice. Any such decision is for the General Assembly which, if it chooses to permit corridor annexation, may enact appropriate legislation. This Court holds only that the General Assembly could not, by its choice of the single undefined word, "contiguous" in the Milford City Charter, fairly be said to have authorized the City to annex outlying property by the corridor or shoestring method.

Stated differently, it would be illogical and unsound to attribute to the General Assembly, based solely on its use of the term "contiguous," an intention to place its imprimatur upon the abuses and capricious exercises of the annexation power that the majority of courts have so widely and resoundingly rejected. In the absence of more explicit statutory guidance, it is far more logical and sensible to assume that the General Assembly intended that the City of Milford should grow by annexing outlying territory in a manner that is consistent with the fundamental concept of a municipality, that is, "a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places." *City of Fultondale v. City of Birmingham,* 507 So.2d at 491. That objective would not be furthered by allowing annexation methods that create not a collective body of inhabitants but, rather, "several bodies scattered across an area," *Id.,* and "isolated areas connected by means of a technical strip a few feet wide," with "crazy-quilt boundaries which are difficult ... to administer." *Town of Mt. Pleasant v. City of Racine,* 127 N.W.2d at 760.

V.

As thus interpreted, the contiguity requirement of the Milford Charter requires the invalidation of the annexation proposed here. Except for Plat 7, none of the properties being annexed is contiguous, even in the literal sense, to the existing City boundaries. Only the highways and roadways being annexed touch the City's boundaries, and even then only for the narrow extent

of those roadways' width. Stated differently, without the *deus ex machina* annexation of the highways and roadways, the City would have no contiguity argument at all, since in the absence of those highways, the outlying annexed areas (other than Plat 7) would be disembodied land masses distinct from, and having no physical relation to, the City's existing boundaries. Accordingly, the proposed annexation must be, and hereby is, declared invalid under Article X, Subsection (b) of the Milford City Charter.[4]

Finally, the Court would be remiss if it failed to comment briefly upon the problem creating this dispute, namely the lack of specificity in the Charter's annexation provision. The parties ask the Court to provide future guidance by filling that empty vessel (the term "contiguous") by attributing to that term some affirmative meaning or content. The difficulty is that no judicially-created formula would reliably afford guidance in this particular area; moreover, any such formula should be supplied by the General Assembly.

Although plaintiffs point to the affirmative definition adopted by the Illinois courts, the Illinois decisions only prove the point. The courts of that state have adopted at least three "formula" definitions of "contiguous:" (i) as sharing a "substantial common boundary" with the existing municipal boundary (*Spaulding School Dist. No. 58 v. City of Waukegan*, 165 N.E.2d at 285); (ii) as having a "common border [of] reasonable length or width" (*People ex rel. Henderson v. City of Bloomington*, 38 Ill.App.2d 9, 186 N.E.2d 159, 162 (1962)); or (iii) as "touching or adjoining in a reasonably substantial physical sense." *Wescom, Inc. v. Woodridge Park Dist.*, 7 Ill.Dec. at 562, 364 N.E.2d at 723–724. The difficulty lies not with any lack of expertise of the Illinois courts, but, rather, in the nature of the problem.

In this Court's view, any judicially created verbal formula, by its very nature, can have only limited utility, because of the multitudinous and differing fact patterns that would likely arise in this area of en-

deavor. To be helpful to municipalities, any definition of "contiguous" would have to be specific and precise; however, the more specific the definition, the more legislative in character it becomes. It is for that reason that judicial definitions in this area tend to be couched in general, imprecise terms, *e.g.*, "substantial common boundary," and "touching ... in a reasonably substantial physical sense." But, it is precisely because of their generality and imprecision that such definitions tend to afford little guidance in specific cases. Accordingly, the Court declines the invitation to use this as an occasion to define "contiguous." No such embellishment is required to decide this particular case, and in all events the more appropriate source for such guidance is the General Assembly.

\* \* \*

For the foregoing reasons, the plaintiffs' motion for summary judgment is granted and the defendants' motion for summary judgment is denied. IT IS SO ORDERED.

---

4. If Plat 7, which *is* contiguous to the City's boundaries, were the sole area in issue, its annexation would be upheld. However, Plat 7 is but one component of a more comprehensive annexation scheme, the entirety of which is presented to the Court for adjudication.