MURDOCK, Justice
(concurring in the result).
I concur in the result reached by the main opinion. I write separately to express concerns regarding this Court’s jurisprudence as to so-called “long-lasso annexations” as discussed in Part III of the main opinion and to comment on the use of the ore tenus standard of review in Part IV of the opinion.

Long-Lasso Annexations

The main opinion reasons from existing precedent to conclude that the acceptability of a “long-lasso” annexation turns on whether the “lasso” encompasses more than a public roadway. The opinion notes that in City of Fultondale v. City of Birmingham, 507 So.2d 489, 491 (Ala.1987), this Court held that “annexation by use of public road rights-of-way is invalid.” It then relies on the fact that in City of Prattville v. City of Millbrook, 621 So.2d 267 (Ala.1993), this Court permitted a “corridor” annexation that included a roadway that was only part of a wider strip of land: “ ‘The corridor in the Millbrook case is a county-owned railroad bed which has a public roadway on part of it. The railroad bed, however, is substantially larger than the roadway. A significant part of the corridor, approximately three quarters of a mile, has no roadway on it at all.’ ” 621 So.2d at 273 (quoting and adopting the trial court’s order).
Preoccupation with the roadway characteristic ignores the fundamental reasoning underlying the City of Fultondale decision. In the course of overruling City of Tuskegee v. Lacey, 486 So.2d 893 (Ala.1985), the City of Fultondale Court observed that “[t]he public road rights-of-way annexed in City of Tuskegee were used merely to create contiguity and, in effect, to avoid the requirement of a touching at some point. We do not believe the legislature intended to allow annexation in this manner.” 507 So.2d at 491. The Court noted that “the wholesale allowance of ‘the long lasso method’ of annexation could invite abuse and substantial problems.” Id. It happened that the “long lasso” in City of Fultondale was in fact a roadway, and, indeed, this fact was noticed by the Court in ruling that the annexation in that case was invalid as a matter of law. Id. Nonetheless, the inclusion of a public roadway is not the characteristic that makes “long lassos” unacceptable. Instead, as the Court explained, the gravamen of the case against “long lassos” is as follows:
“Although Alabama law does not require that municipal boundaries form a regular shape, the legal and popular idea of a municipality in this country is ‘that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants — that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. ’ 56 Am.Jur.2d Municipal Corporations § 69 at 125 (1971); City of Dothan [v. Dale County Comm’n, 295 Ala. 131, 324 So.2d 772 (1975) J. The annexations proposed by Fultondale and Trussville do not create a collective body of inhabitants, but, rather, several bodies scattered across an area, a result we feel the legislature did not intend.”
507 So.2d at 491 (emphasis added).
Clearly, the essential rationale of the City of Fultondale decision is that annexing a long strip of land to reach another “community, locality, [or] vicinity,” one *1054 that is not “contiguous” to the existing boundaries of the annexing municipality, is a use of the annexation power that was not intended by the legislature. The rationale of the Court was that a “long lasso”— whether or not consisting solely of a public roadway — is an artifice to achieve the annexation into a municipality of a separate body of inhabitants and landowners who do not share with the existing municipality a community of interest grounded in their place of residency.
In this case, Gulf Shores annexed the 330-foot-wide strip so that it could reach property located on the Fort Morgan peninsula. The fact that the strip of land annexed is wider than Fort Morgan Road is beside the point.[5] The point is that the annexation results in a municipality that is spread over geographically disparate areas 19 miles apart and that this is made possible only through annexation of a narrow strip of land so that it can be claimed that the properties are “contiguous.”
Other jurisdictions likewise do not base their approval or disapproval of these kinds of annexations on whether the annexation consists solely of a roadway or something slightly wider.
“The use of a thin strip of land to connect a disembodied parcel of land to a municipality has been variously characterized as ‘corridor,’ ‘strip,’ ‘shoestring,’ or ‘long lasso’ annexation. Those descriptions are a shorthand reference to the use of long, radiating strips which intersect municipal boundaries for only a relatively narrow, short distance, as a means of annexing an otherwise disembodied, distantly-placed territorial area.”
State ex rel. Dep’t of Transp. v. City of Milford, 576 A.2d 618, 621 (Del.Ch.1989) (emphasis added). The fact is that a significant majority of “courts are generally loath to find one territory to be contiguous to another where the only link between the two is forged by a narrow corridor.” In re De-Annexation of Certain Real Prop. from City of Seminole, 102 P.3d 120, 130-31 (Okla.2004) (emphasis added) (citing Clark v. Holt, 218 Ark. 504, 237 S.W.2d 483, 484-85 (1951); City of Milford, supra; Potvin v. Chubbuck, 76 Idaho 453, 284 P.2d 414, 417 (1955); City of Charleston v. Witmer, 304 Ill.App.3d 386, 237 Ill.Dec. 529, 709 N.E.2d 998, 1000 (1999); Ridings v. City of Owensboro, 383 S.W.2d 510, 511-12 (Ky.1964); Griffin v. City of Robards, 990 S.W.2d 634, 640 (Ky.1999); Owosso Twp. v. City of Owosso, 385 Mich. 587, 189 N.W.2d 421, 422 (1971); State ex rel. Danielson v. Village of Mound, 234 Minn. 531, 48 N.W.2d 855, 856 (1951); Johnson v. City of Hastings, 241 Neb. 291, 488 N.W.2d 20, 24 (1992); Middletown v. McGee, 39 Ohio St.3d 284, 530 N.E.2d 902, 905 (1988); Watson v. Doolittle, 10 Ohio App.2d 143, 226 N.E.2d 771, 775 (1967); City of Rapid City v. Anderson, 612 N.W.2d 289, 293 (S.D.2000); and Town of Mt. Pleasant v. City of Racine, 24 Wis.2d 41, 127 N.W.2d 757, 760 (1964)).
Like this Court, other courts repeatedly have emphasized the fact that a municipality is supposed to be a unified body of inhabitants as the reason for not permitting these types of annexations. See, e.g., Certain Real Prop, from City of Seminole, 102 P.3d at 130 (observing that “[t]he basic idea of a municipality is that of a unified body of inhabitants having a community of interest and gathered together in a single mass, with recognized and well-defined external boundaries, not separate and discon *1055 nected areas”); City of Rapid City v. Anderson, 612 N.W.2d at 294 (noting that “[t]o allow the use of ‘corridor’ annexations would be to defeat the basic concept of a municipal corporation, that of unity and compactness”); City of Milford, 576 A.2d at 624 (“[T]he fundamental concept of a municipality [is] ‘a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places.’ City of Fultondale v. City of Birmingham, 507 So.2d at 491. That objective would not be furthered by allowing annexation methods that create not a collective body of inhabitants but, rather, ‘several bodies scattered across an area,’ Id., and ‘isolated areas connected by means of a technical strip a few feet wide,’ with ‘crazy-quilt boundaries which are difficult ... to administer.’ Town of Mt. Pleasant v. City of Racine, 127 N.W.2d at 760.”).
In sum, previous cases from this Court indicate that the annexation at issue here is of the impermissible “long-lasso” variety because it is contrary to the idea of a municipality as being a “collective body of inhabitants,” and a significant majority of other jurisdictions do not approve of this kind of annexation, whether it is referred to as a “strip,” “corridor,” or “long-lasso” annexation. As the Milford court succinctly observed:
“[I]t would be illogical and unsound to attribute to the General Assembly, based solely on its use of the term ‘contiguous,’ an intention to place its imprimatur upon the abuses and capricious exercises of the annexation power that the majority of courts have so widely and resoundingly rejected. In the absence of more explicit statutory guidance, it is far more logical and sensible to assume that the General Assembly intended that the City of Milford should grow by annexing outlying territory in a manner that is consistent with the fundamental concept of a municipality, that is, ‘a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places.’ City of Fultondale v. City of Birmingham, 507 So.2d at 491.”
576 A.2d at 624.
That said, the argument presented by the FMCA is limited insofar as the issues discussed in Part III of the main opinion are concerned. The FMCA argues that whether an annexation of the nature at issue is valid should turn on whether the strip of land employed includes private property. Because I agree with the conclusion reached by the main opinion that this is not the appropriate criterion upon which to judge “long-lasso” annexations, and because we generally will not reverse a trial court’s judgment on a ground not argued on appeal, Smith v. Mark Dodge, Inc., 934 So.2d 375, 380 (Ala.2006), I concur in the result reached by the main opinion as to the issues discussed in Part III thereof.

Application of the Ore Tenus Standard

I am concerned about the extent to which the main opinion suggests reliance upon the ore tenus standard with respect to the issues discussed in Part IV of the opinion. To the extent that some of the “facts” integral to the trial court’s decision — e.g., that Felton did in fact review certain records and what he observed in those records — turn on oral testimony by Felton or others, the ore tenus standard of review is, of course, applicable. It seems, however, that there are issues in Part IV of the opinion that ultimately turn upon the presence or absence of certain deeds, the content of certain public records, and the legal import of the same. To that *1056 extent, I do not believe the ore tenus standard is appropriate.

. Indeed, the main opinion notes that "[t]he predominant characteristic of this property was Fort Morgan Road and its approximately 80-foot-wide right-of-way....” 100 So.3d at 1044.